**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4159**

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH K. NEWBOLD,

Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Durham. William L. Osteen, District Judge. (1:05-cr-00262-WLO)

Argued: November 29, 2006          Decided: January 31, 2007

Before WILLIAMS and KING, Circuit Judges, and HAMILTON, Senior Circuit Judge.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Elizabeth Brooks Scherer, SMITH MOORE, L.L.P., Raleigh, North Carolina, for Appellant. Randall Stuart Galyon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee. **ON BRIEF:** James D. Cowan, Jr., SMITH MOORE, L.L.P., Greensboro, North Carolina, for Appellant. Anna Mills Wagoner, United States Attorney, Greensboro, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Joseph Kenneth Newbold pleaded guilty to distributing 5.3 grams of a substance containing 5-Methoxy-alpha-methyltryptamine (5-MeO-AMT), in violation of 21 U.S.C.A. §§ 841(a)(1), (b)(1)(C) (West 1999 & Supp. 2006), money laundering, in violation of 18 U.S.C.A. §§ 2 (West 2000 & Supp. 2006) and 1956(a)(3)(B) (West 2000 & Supp. 2006), and being a felon in possession of a firearm, in violation of 18 U.S.C.A. §§ 922(g)(1) (West 2000 & Supp. 2006) and 924(a)(2) (West 2000 & Supp. 2006). The district court sentenced Newbold to a total term of 225 months' imprisonment. On appeal, Newbold argues that the district court erred in sentencing him as a career offender and an armed career criminal and that his sentence was imposed in violation of his confrontation and jury-trial rights under the Sixth Amendment. Finding no error, we affirm.

I.

The North Carolina State Bureau of Investigation (SBI), the Randolph County Sheriff's Office in Asheboro, North Carolina, and the Eden, North Carolina police department began investigating Newbold in July 2004 on suspicion that he was distributing controlled substances. On July 28, 2004, two undercover SBI agents and a confidential informant met Newbold at a convenience store in Randleman, North Carolina; at the meeting, Newbold sold them 468.1 grams of marijuana and 50 gel capsules containing 5.3 grams of 5-

2

MeO-AMT. Over the next few months, the undercover agents completed a number of other controlled drug transactions with Newbold. During one of these transactions, Newbold mentioned to the SBI agents that he could launder drug money for them; the agents agreed to go along with the money-laundering scheme and brought in an undercover agent from the Internal Revenue Service to pose as the money handler for the drug organization. Newbold created a shell corporation, secured a fake W-2 and birth certificate for one of the undercover agents, and aided in establishing a post office box and corporate checking account for the corporation. With the pieces of his laundering scheme in place, Newbold began laundering various cash amounts for the undercover agents.

On July 13, 2006, federal agents executed search and arrest warrants at Newbold's home. The agents recovered eight firearms, including two assault rifles, and a small amount of marijuana. During an interview on July 13, 2006, Newbold admitted, after waiving his Miranda rights, that he laundered money provided by the undercover agents, carried a firearm when distributing drugs to the agents, and carried a .44 caliber revolver when he received $40,000 in cash from the agents on February 2, 2005. Newbold also admitted that he kept a .357 Magnum near the marijuana in his house to fend off would-be robbers.

On July 25, 2005, a grand jury sitting in the Middle District of North Carolina indicted Newbold for the distribution of 5.3 grams of 5-MeO-AMT (Count One) and 468.1 grams of marijuana (Count

Two); money laundering in the sums of $9,900 (Count Three), $100 (Count Four), $10,300 (Count Five), and $41,200 (Count Six); and for being a felon in possession of a firearm (Count Seven). On September 8, 2005, Newbold executed a written plea agreement with the Government in which he pleaded guilty to Counts One, Three, and Seven in exchange for the Government's dismissal of the remaining counts of the indictment. As part of the plea agreement, Newbold admitted to distribution of 5.3 grams of 5-MeO-AMT. The district court accepted Newbold's guilty plea the same day.

The probation officer filed a presentence report (PSR) calculating Newbold's offense level at 34 under the "armed career criminal" provision of the U.S. Sentencing Guidelines Manual, § 4B1.4(b)(3)(A) (2004). The PSR also noted that Newbold qualified as a career offender under U.S.S.G. § 4B1.1, but applied the armed-career-criminal enhancement instead because it resulted in a higher offense level. After a three-level downward adjustment for acceptance of responsibility, the PSR recommended a total offense level of 31. Newbold's seven criminal history points would have normally resulted in a criminal history category of IV, but because the probation officer determined that Newbold qualified as a career offender, his criminal history category was automatically increased to VI pursuant to U.S.S.G. § 4B1.1. The resulting sentence range was 188 to 235 months' imprisonment.

4

Newbold filed written objections to the PSR, including broad objections to the PSR's reliance on facts supporting upward adjustments that were neither admitted by Newbold nor proved to a jury beyond a reasonable doubt. Newbold also objected to the PSR's application of the career-offender and armed-career-criminal enhancements.

At Newbold's sentencing hearing on January 10, 2006, the district court adopted the PSR's recommendations over Newbold's objections, including his objection at the hearing that the district court violated his rights under the Confrontation Clause by relying on testimonial hearsay in the PSR, and sentenced Newbold to 225 months' imprisonment on each of Counts One, Three, and Seven, to run concurrently, followed by three years of supervised release on Counts One and Three, and five years of supervised release on Count Seven. (J.A. at 85.) Newbold timely noted an appeal. We have jurisdiction pursuant to 28 U.S.C.A. § 1291 (West 2006) and 18 U.S.C.A. § 3742(a) (West 2000).

## II.

Newbold argues on appeal that (1) the district court erred in applying the § 4B1.1 career-offender enhancement because it improperly found that two of his previous drug offenses were separate offenses for sentencing purposes; (2) the district court erred in sentencing him as an armed career criminal because his

5

previous felony drug convictions do not qualify as predicate offenses under 18 U.S.C.A. § 924(e); (3) the district court's reliance on testimonial hearsay at sentencing violated his rights under the Confrontation Clause; (4) the district court committed Sixth-Amendment error in applying the career-offender and armed-career-criminal enhancements because Newbold's previous convictions were not charged in the indictment and were neither admitted by him nor proved to the jury; and (5) his sentence also violates the Sixth Amendment because it is based on other judicially-found facts -- including facts about drug quantity and laundered cash amounts -- that were not submitted to the jury. We address each of these arguments in turn.

A.

Newbold first argues that the district court erred in sentencing him as a career offender under U.S.S.G. § 4B1.1. "In assessing a challenge to a sentencing court's application of the Guidelines, we review the court's factual findings for clear error and its legal conclusions de novo." United States v. Allen, 446 F.3d 522, 527 (4th Cir. 2006).

Guideline § 4B1.1(a) provides:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant

6

        has at least two prior felony convictions of either a
        crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.

The district court applied the career-offender enhancement because it found that Newbold's 1984 state and federal felony convictions for drug distribution were two separate offenses for sentencing purposes. Newbold does not deny that the § 4B1.1 enhancement would otherwise apply to him, but he argues that these two previous drug offenses are "related" under the meaning of Guideline § 4A1.2[1] and therefore should have been treated as one offense for sentencing purposes. He points out that the offenses were close in both proximity and time, shared a similar modus operandi, and were part of the same drug conspiracy. Additionally, Newbold notes that the two 1984 convictions were prosecuted and sentenced separately only because two different sovereigns -- the federal government and the state of North Carolina -- took jurisdiction over the offenses.

Based on the commentary to U.S.S.G. § 4A1.2, however, "[p]rior sentences are not considered related if they were for offenses that were separated by an intervening arrest." U.S.S.G. § 4A1.2 cmt. n.3. Newbold concedes that an intervening arrest separated his two 1984 drug convictions. Accordingly, the district judge properly

---

[1]Application Note 3 of U.S.S.G. § 4B1.1 instructs a sentencing court to consult U.S.S.G. § 4A1.2 to determine the number of qualifying prior convictions for a defendant. U.S. Sentencing Guidelines Manual § 4B1.1 cmt. n.3 (2004).

7

applied the career-offender enhancement because the two previous convictions are not related for sentencing purposes. See United States v. Collins, 412 F.3d 515, 520 (4th Cir. 2005)(holding that two previous convictions were not "related" for sentencing purposes when they were separated by an intervening arrest).

B.

Newbold also argues that the district court erred in applying U.S.S.G. § 4B1.4, the armed career-criminal enhancement, to his sentence because the three previous offenses relied on by the district court in applying the enhancement do not qualify as predicate offenses under the Armed Career Criminal Act (ACCA), 18 U.S.C.A. § 924(e). "Whether [a prior] conviction qualifies as a predicate conviction under section 924(e) is a question of statutory interpretation [that we] review[] de novo." United States v. Brandon, 247 F.3d 186, 188 (4th Cir. 2001).

The ACCA imposes a mandatory minimum fifteen year sentence for any defendant who violates § 922(g) and has three previous convictions for "violent felon[ies]" or "serious drug offense[s]," or both. 18 U.S.C.A. § 924(e)(1). "Serious drug offense" is defined in pertinent part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C.A. § 924(e)(2)(A)(ii). The district court

8

sentenced Newbold as an armed career criminal because it found that three of his previous drug convictions -- namely, his 1980, 1981, and 1984 North Carolina felony convictions for possession with intent to sell and deliver controlled substances -- were "serious drug offenses" under the statute. Although Newbold makes several arguments as to why these three prior convictions are not "serious drug offenses" for purposes of the ACCA, none of these arguments persuade us that the district court erred in sentencing him as an armed career criminal.

1.

First, Newbold contends that because the certificate of restoration of citizenship that North Carolina issued him upon his discharge from federal supervision did not expressly provide that he could not possess a firearm, his three prior North Carolina convictions cannot serve as predicate offenses under the ACCA. Newbold bases his argument on 18 U.S.C.A. § 921(a)(20), which he claims prevents any conviction for which a certificate of restoration of citizenship has been provided from serving as a predicate crime under § 924(e)(2) when that certificate does not expressly provide that the defendant cannot possess a firearm. Newbold received a certificate of restoration of citizenship from North Carolina on August 3, 2000, following his discharge from federal supervision in 1999. It is undisputed that the certificate does not expressly provide that Newbold cannot possess a firearm.

As such, Newbold argues that his previous state drug convictions cannot serve as predicate crimes under the ACCA.[2]

As an initial matter, we must address the Government's argument that the "restoration-of-rights" exception under § 921(a)(20) does not apply to "serious drug offenses."  Unlike the definition of "serious drug offense," the definition of "violent felony" includes the phrase "crime punishable by imprisonment for a term exceeding one year."  18 U.S.C.A. § 924(e)(2)(B).  Section 921(a)(20) in turn states that what constitutes a "crime punishable by imprisonment for a term exceeding one year" is

> determined in accordance with the law of the jurisdiction in which the proceedings were held.  Any conviction . . . for which a person has been pardoned or had civil rights restored shall not be considered a conviction for purposes of [the armed career enhancement], unless such pardon, expungement, or restoration of civil rights

---

[2]We assume for the sake of argument that the June 28, 1999 certificate  was intended to cover Newbold's previous state drug convictions in North Carolina.  We note, however, that the certificate's language suggests that this may not have been the case.  The only certificate of restoration of citizenship provided by North Carolina to Newbold that was included in the record provides that Newbold "was convicted of a crime against the United States or another state," not against the state of North Carolina.  (J.A. at 146. (emphasis added)).  This phrasing tracks the language of N.C. Gen. Stat. § 13-2 (2005), which describes the process for issuing and filing a certificate of restoration of citizenship and clearly distinguishes between cases involving persons convicted of crimes under North Carolina law, N.C. Gen. Stat. § 13-2(a), and cases involving persons "convicted of a crime against another state or the United States," N.C. Gen. Stat. § 13-2(b).  On the other hand, we acknowledge that it would have made little practical sense for North Carolina to issue two separate certificates to Newbold; either one would have been enough evidence that his rights under North Carolina law had been seemingly restored.

> expressly provides that the person may not ship, transport, possess, or receive firearms.

18 U.S.C.A. § 921(a)(20).

The Government contends that because the definition of "serious drug offense" does not reference the phrase "crime punishable by imprisonment for a term exceeding one year," we do not need to consult § 921(a)(20)'s "restoration-of-rights" provision in determining whether a conviction is a "serious drug offense" under the statute. This interpretation of the statutory scheme is without merit. While it is true that the definition of "serious drug offense" in § 924(e)(2)(A) does not use the phrase "crime punishable by imprisonment for a term exceeding one year," convictions that would otherwise qualify as "serious drug offenses" by definition come within the meaning of that phrase. "Serious drug offense" is defined, inter alia, as "an offense under State law . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C.A. § 924(e)(2)(A). Additionally, convictions that would otherwise qualify as "serious drug offenses" are not among the crimes that are excluded by § 921(a)(20) from the definition of "crime punishable by imprisonment for a term exceeding one year." See 18 U.S.C.A. § 921(a)(20)(A)-(B) (excluding various crimes). Thus, any conviction that would come within the definition of "serious drug offense" would also necessarily qualify as a "crime punishable by imprisonment for a term exceeding one year." There is therefore no interpretive reason to determine whether a crime is

11

a "serious drug offense" without resort to the "restoration-of-rights" provision in § 921(a)(20).

Having concluded that § 921(a)(20) is pertinent to the determination of whether Newbold's previous drug convictions were serious drug offenses, we now turn to Newbold's argument. We first note that, aside from the issues surrounding the certificate, see supra note 2, there is no question that Newbold's right to possess a firearm had not been restored by the time North Carolina revised its Felony Firearms Act in 1995. Under North Carolina's Felony Firearms Act in effect at the time of Newbold's previous convictions, felons could have their firearm rights restored once five years had elapsed from the time of their release from prison. N.C. Gen. Stat. § 14-415.1(a) (1993), amended by N.C. Gen. Stat. § 14-415.1(a) (2005). In 1995, North Carolina revised its Felony Firearms Act,[3] replacing the five-year firearm disability with a complete ban on felons possessing most types of firearms. N.C. Gen. Stat. § 14-415.1(a) (2005). Prior to December 1, 1995, the effective date of the revised act, Newbold was never out of state or federal custody long enough for his firearm rights to have been restored under the previous version of the Felony Firearms Act.

---

[3]In a related argument, Newbold argues that the revised Felony Firearms Act, N.C. Gen. Stat. § 14-415.1(a) (2005), is ex post facto as applied to him. We have rejected this argument in United States v. Farrow, 364 F.3d 551, 555 (4th Cir. 2004) (holding that retroactive application of North Carolina's Felony Firearms Act's complete ban on felon firearm possession does not violate the Ex Post Facto Clause).

After December 1, 1995, Newbold was completely banned under North Carolina law from possessing a firearm irrespective of the time he had been out of prison.

As noted above, Newbold, relying on the plain language of § 921(a)(20), contends that his previous convictions cannot serve as predicate crimes under the ACCA as a matter of law because his certificate of restoration of rights does not "expressly provide" that he cannot possess a firearm. 18 U.S.C.A. § 921(a)(20). While his argument has some force, we have determined that the "better reasoned approach" is to "look to the whole of state law," including state law concerning a convicted felon's firearm privileges. United States v. McLean, 904 F.2d 216, 218 (4th Cir. 1990). Looking to the whole of North Carolina law, at the time Newbold received his certificate on August 3, 2000, North Carolina's Felony Firearms Act completely and permanently banned Newbold from possessing firearms. Under our precedent, then, the Firearms Act "expressly provides" the circumstances under which a "'person may not ship, transport, possess, or receive firearms,' as required by . . . § 921(a)(20)." Id. at 219; see also United States v. King, 119 F.3d 290, 293 (4th Cir. 1997)("In determining whether a defendant's civil rights have been restored, we 'look to the whole of state law . . . .'"). We therefore reject Newbold's argument.

2.

Newbold next argues that his previous state drug convictions are not predicate offenses under the ACCA because while they

13

previously carried "term[s] of imprisonment of ten years or more" under North Carolina law, they do not <u>currently</u> carry terms of imprisonment of ten years or more because North Carolina decreased the penalties for those crimes when it revised its sentencing scheme in 1994.[4]  He points out that the statutory definition of "serious drug offense" uses the phrase "<u>is</u> prescribed by law" instead of "<u>was</u> prescribed by law" to support his argument that the determination of whether a crime carries a term of imprisonment of ten years or more must be made at the time of federal sentencing rather than at the time of the previous conviction.

In further support of his view, Newbold points us to the Sixth Circuit's decision in <u>United States v. Morton</u>, 17 F.3d 911 (6th Cir. 1994).  In <u>Morton</u>, the district court had concluded that it should determine whether the defendant's previous convictions were serious drug offenses at the time of the convictions and not at the time of sentencing.  On appeal, the <u>Morton</u> court held that principles of lenity required the district court to determine whether the defendant's previous convictions were serious drug offenses at the time of sentencing.  <u>Id.</u> at 916.  Because Tennessee did not consider the defendant's previous trafficking offenses serious enough to impose at least a ten-year sentence at the time of sentencing, the

_____

[4]The Government contends that we should review this particular argument for plain error, but Newbold clearly made this argument in his written objections to his PSR.  Accordingly, we review his claim de novo.  <u>United States v. Brandon</u>, 247 F.3d 186, 188 (4th Cir. 2001).

14

<u>Morton</u> court vacated the district court's sentence and remanded for resentencing.  <u>Id.</u>

The Government counters with the Fifth Circuit's decision in <u>United States v. Hinojosa</u>, 349 F.3d 200 (5th Cir. 2003). Distinguishing <u>Morton</u>, the <u>Hinojosa</u> court held the defendant's three drug convictions that predated the effective date of the revisions to Texas's criminal code qualified as "serious drug offenses" under the ACCA.  <u>Id.</u> at 205.  The court noted that, unlike the Tennessee sentencing scheme at issue in <u>Morton</u>, Texas's revised scheme "specifically provides that the revised sentences do not apply to crimes committed before the effective date of the revisions."  <u>Id.</u> The court concluded that "even under <u>Morton</u>, [the defendant's] previous convictions would be for 'serious drug offenses' because if he were sentenced by the state . . . today, he would still be subject to a maximum term of at least ten years."  <u>Id.</u>

When North Carolina revised its sentencing scheme in 1994, it specifically provided that the revised sentences do not apply to crimes committed before the effective date of the revisions.  N.C. Gen. Stat. § 15A-1340.10 (2005); <u>State v. Branch</u>, 518 S.E.2d 213, 215 (N.C. Ct. App. 1999)(explaining that the defendant's "offenses that were committed prior to 1 October 1994, the effective date of the Structured Sentencing Act, fall under the sentencing guidelines of the Fair Sentencing Act as a matter of law").  In effect, then, North Carolina has two sentencing schemes: one for crimes committed before October 1, 1994 and one for crimes committed after October 1,

1994.  In this regard, North Carolina's revised sentencing scheme is similar to the Texas sentencing scheme at issue in Hinojosa, and we find the Fifth Circuit's reasoning in that case persuasive.  If Newbold was tried and convicted today for the three drug offenses at issue, he would still be subject to the higher sentences imposed by the pre-1994 sentencing statutes.  Thus, Newbold's three previous felony drug convictions were punishable by a term of imprisonment of at least ten years or more at the time he committed the crimes and at the time the district court sentenced him in this case.  We therefore reject Newbold's argument.

3.

Newbold argues that even if the determination about whether a previous offense is a "serious drug offense" is made at the time of federal sentencing, his previous drug convictions still do not count as predicate crimes under § 924(e) because, in light of the Supreme Court's decision in Blakely v. Washington, 542 U.S. 296 (2004), his crimes do not carry a "statutory maximum" sentence of at least ten years.  Blakely held that the "statutory maximum" penalty for an offense is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant."  Id. at 303.  Under North Carolina's now-superseded Fair Sentencing Act, which was in effect at the time of Newbold's three previous drug convictions, Newbold's previous drug convictions were Class H felonies that each carried a presumptive penalty of no more than six years.  See N.C. Gen. Stat. § 15A-1340.4(f)(6), repealed by

16

Structured Sentencing Act.    Under the Fair Sentencing Act, a sentencing court was required to impose a presumptive sentence unless it found "aggravating factors," by a preponderance of the evidence, that warranted an enhanced sentence above the presumptive range.  Id. § 15A-1340.4.  If a court found aggravating factors, it could impose a sentence up to the maximum sentence permitted by statute, which was ten years for Class H felonies.  Id.

Newbold maintains that because the specific facts of his previous convictions did not provide any basis for imposition of a sentence exceeding the presumptive range -- i.e., that no "aggravated" facts were admitted by him or proved to a jury -- under Blakely[5] his prior convictions were not for offenses punishable by

--------

[5]In his brief, Newbold initially relied on the North Carolina Supreme Court's decision in State v. Allen, 615 S.E.2d 256, 260-61 (N.C. 2005), opinion withdrawn, 635 S.E.2d 899 (N.C. 2006), in support of this Blakely-based argument.  In Allen, the North Carolina Supreme Court, construing North Carolina's current Structured Sentencing Act, stated that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed presumptive range must be submitted to the jury and proved beyond a reasonable doubt."  Id. at 265.  After briefing, but before oral argument, the state Supreme Court withdrew its opinion in Allen in response to the U.S. Supreme Court's decision in Washington v. Recuenco, 126 S. Ct. 2546 (2006). Recuenco held that failure to submit a sentencing factor to the jury is not a structural error that always invalidates a conviction and thus can be evaluated under the harmless-error standard.  Id. at 2551.  Allen was withdrawn solely to reconsider whether the Blakely error in that case was harmless.  State v. Allen, 635 S.E.2d 899, 899 (N.C. 2006).
  While Allen has been withdrawn, Newbold contends in a letter submitted pursuant to Fed. R. App. P. 28(j) that the decision's constitutional analysis remains intact, excepting the harmless-error issue, and that the withdrawal of the decision has no bearing on the issue on appeal.  Newbold's position is supported by the North Carolina Supreme Court's post-Allen decision in State v.

17

a term of imprisonment of at least ten years.  He explains that although the maximum aggravated punishment for his previous convictions would have been at least ten years, the maximum non-aggravated punishment was six years, which, as the maximum sentence allowed under <u>Blakely</u>, is less than the ten years needed to serve as predicate "serious drug offenses" under the ACCA.

While clever, Newbold's argument must fail.  Section 924(e)(2)'s definition of "serious drug offense" requires that the previous conviction be "an <u>offense</u> . . . for which a <u>maximum</u> term of imprisonment of ten years or more is prescribed by law."  18 U.S.C.A. 924(e)(2)(emphases added).  Clearly, the word "maximum" is linked to the conduct, the "offense," and not to the individual convicted of the offense.  Thus, the proper inquiry under § 924(e)(2) is not whether the individual defendant was sentenced to a term of ten years or more, but whether <u>any</u> defendant convicted of the crime could be sentenced to ten years or more of imprisonment.  If any possible conviction for the offense carries a term of imprisonment of at least ten years, then the offense may serve as a

_____

<u>Norris</u>, 630 S.E.2d 915, 916 (N.C. 2006).  The Government, however, argues that Newbold's reliance on <u>Allen</u> was misplaced in the first place because <u>Allen</u> expressly limited applications of its holdings to "cases in which the defendants have not been indicted as of the certification date of this opinion and to cases that are now pending on direct review or are not yet final."  <u>Allen</u>, 615 S.E.2d at 450 (internal quotation marks omitted).  We need not delve into this disagreement here, as Newbold's argument can be pressed on the basis of <u>Blakely</u> without resort to reliance on <u>Allen</u>.

18

predicate crime under the ACCA.  We have reached similar conclusions in other contexts.  See United States v. Jones, 195 F.3d 205, 206-07 (4th Cir. 1999)(holding in the context of a § 922(g)(1) conviction that a prior North Carolina conviction was for a "crime punishable by imprisonment for a term exceeding one year" if any defendant charged with that crime could receive a sentence of more than one year); United States v. Harp, 406 F.3d 242, 246-47 (4th Cir. 2005)(reaching same conclusion as Jones in interpreting nearly identical language under U.S.S.G. § 4B1.2).

Blakely does not change this outcome.  North Carolina courts have concluded that the state sentencing regime can accommodate the process that Blakely demands; so long as aggravating factors are admitted by the defendant or proved to the jury beyond a reasonable doubt, a sentencing court may impose a sentence above the presumptive range and up to the maximum sentence allowed by statute. See State v. Norris, 630 S.E.2d 915, 916 (N.C. 2006)(assuming that, after Blakely, "aggravating" factors may still enhance a defendant's sentence beyond the presumptive range so long as such factors are admitted by the defendant or proved to a jury beyond a reasonable doubt).  Moreover, our decision in Harp dictates that, even post-Blakely, "we consider the maximum aggravated sentence that could be imposed for that crime upon a defendant with the worst possible criminal history."  Harp, 406 F.3d at 246 (emphasis omitted).  Thus, even taking Blakely's holding into account, Newbold's previous drug convictions still count as predicate "serious drug offenses" under

19

the ACCA because some instance of conviction of those crimes could result in a sentence of ten years' imprisonment. Accordingly, the district court did not err in sentencing Newbold as an armed career criminal pursuant to § 924(e)(2) and U.S.S.G. § 4B1.4.

C.

We also reject Newbold's argument that the district court violated his confrontation rights under the Sixth Amendment by relying on testimonial hearsay in the PSR at sentencing. Because Newbold preserved this issue by objecting on the basis of Crawford v. Washington, 541 U.S. 36 (2004), we review de novo his Sixth Amendment claim. See United States v. Mackins, 315 F.3d 399, 405 (4th Cir. 2003).

In Crawford, the Supreme Court held that the Confrontation Clause prohibits the admission at trial of testimonial statements that are not subject to cross-examination. Id. at 50-51. Dissenting in Blakely, Justice Breyer suggested that under the Blakely majority's interpretation of the Sixth Amendment, district courts' use of PSRs containing testimonial hearsay might violate the Confrontation Clause under Crawford. Blakely, 542 U.S. at 346 (Breyer, J., dissenting). Seizing on Justice Breyer's observation, Newbold invites us to extend Crawford to sentencing and hold here that the district court's reliance on the PSR -- which he contends is brimming with testimonial hearsay -- violated the Confrontation Clause.

20

While post-<u>Crawford</u> and post-<u>Blakely</u>/<u>Booker</u> courts have paused to question the continuing validity of allowing testimonial hearsay at sentencing, <u>none</u> of those courts have concluded that the rule announced in <u>Crawford</u> applies at sentencing. See <u>United States v. Katzopoulos</u>, 437 F.3d 569, 576 (6th Cir. 2006)("Though the cases may be a broad signal of the future, there is nothing specific in <u>Blakely</u>, <u>Booker</u>, or <u>Crawford</u> that would cause this Court to reverse its long-settled rule of law that [the] Confrontation Clause permits the admission of testimonial hearsay at sentencing proceedings."); <u>United States v. Chau</u>, 426 F.3d 1318, 1323 (11th Cir. 2005)(same); <u>United States v. Martinez</u>, 413 F.3d 239, 243 (2d Cir. 2005)(same); <u>United States v. Luciano</u>, 414 F.3d 174, 179 (1st Cir. 2005)(same). We likewise find nothing in <u>Blakely</u> or <u>Booker</u> that "necessitates a change in the majority view that there is no Sixth Amendment right to confront witnesses during the sentencing phase." <u>Luciano</u>, 414 F.3d at 179. We therefore reject Newbold's Confrontation Clause argument.

D.

Newbold also argues that his sentence violates the Sixth Amendment because it contains a number of offense-level adjustments -- including adjustments based on drug-quantity, firearms possession, and amounts laundered -- that were based on impermissible factual findings by the district court and not on facts admitted by him or found by a jury beyond a reasonable doubt.

21

He cites <u>Blakely</u> and <u>Booker</u> as support for his argument.  There are, however, two problems with this argument, one practical and one precedential.  First, as a practical matter, we note that the district court's factual findings concerning drug quantity, Newbold's possession of a firearm in connection with drug and money laundering offenses, and cash amounts laundered by him did not affect his sentence because the district court ultimately sentenced him as an armed career criminal pursuant to § 924(e) and U.S.S.G. § 4B1.4.  This automatically increased his offense level to 34, which exceeded the offense level that was calculated based on the various factual findings that Newbold now challenges.  Even assuming for the sake of argument that the district court erred in finding these facts, they ultimately did not bear on the length of Newbold's sentence.

Second, as a precedential matter, we have held post-<u>Booker</u> that district courts <u>do not</u> violate the Sixth Amendment by finding facts at sentencing under an advisory Guidelines regime that do not increase a defendant's sentence beyond the statutory maximum sentence that could have been imposed based on the defendant's admissions and jury findings alone.  <u>United States v. Morris</u>, 429 F.3d 65, 72 (4th Cir. 2005).  We have stated that "<u>Booker</u> does not in the end move any decision from judge to jury, or change the burden of persuasion," and that the "remedial portion of <u>Booker</u> held that decisions about sentencing factors will continue to be made by judges, on a preponderance of the evidence, an approach that

comports with the sixth amendment so long as the guideline system has some flexibility in application." Id. (internal quotation marks omitted). Because Newbold's within-Guidelines sentence does not exceed the statutory maximum sentence that could have been imposed based on his admissions alone, there is no cognizable Sixth Amendment error.

This leads us to Newbold's final argument. Newbold contends that the district court should not have applied the career-offender and armed-career-criminal enhancements to his sentence because his previous convictions were not charged in the indictment and were neither admitted by Newbold nor proved to the jury. Newbold does not challenge the existence of his prior convictions; rather, he argues that the Supreme Court's decisions in Apprendi v. New Jersey, 530 U.S. 466 (2000), Blakely, and Booker all "suggest that when sentencing pursuant to a recidivist statute or guideline enhancement, a defendant's prior convictions must either be admitted to by the defendant or pled and proven by the government beyond a reasonable doubt." (Appellant's Br. at 7-8.)

Newbold's argument, however, is foreclosed by the Supreme Court's decision in Almendarez-Torres v. United States, 523 U.S. 224, 227 (1998)(holding that, for purposes of sentencing under recidivist provisions in statutes, prior convictions do not need to be charged in the indictment or proved to the jury). As we explained in United States v. Cheek, 415 F.3d 349 (4th Cir.), cert. denied, 126 S. Ct. 640 (2005), "we are not free to overrule or

23

ignore the Supreme Court's precedents."  Id. at 353 (citing State Oil Co. V. Khan, 522 U.S. 3, 20 (1997)("[I]t is the [Supreme] Court's prerogative alone to overrule one of its precedents.")). Until that day comes, we must reject Newbold's argument.[6]

### III.

In sum, we hold that the district court properly applied the career-offender and armed-career-criminal enhancements in determining Newbold's sentence.  We likewise reject Newbold's arguments that the district court violated the Sixth Amendment by sentencing him based on facts not submitted to the jury and by relying on testimonial hearsay at sentencing.  Accordingly, we affirm Newbold's convictions.

AFFIRMED

---

[6]Newbold concedes that he primarily makes this argument to preserve it for future review because he believes that Almendarez-Torres has been called into question by Blakely and Booker.