**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 10-6929**

UNITED STATES OF AMERICA,

             Plaintiff - Appellee,

      v.

JOSEPH K. NEWBOLD,

             Defendant - Appellant.

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Thomas D. Schroeder, District Judge.  (1:05-cr-00262-TDS-1; 1:08-cv-00698-TDS-PTS)

Argued: March 24, 2015                    Decided: June 30, 2015

Before KING and GREGORY, Circuit Judges, and DAVIS, Senior Circuit Judge.

Vacated and remanded by published opinion.  Judge Gregory wrote the opinion, in which Judge King and Senior Judge Davis joined.

**ARGUED**: Ashley N. Waring, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Michael Francis Joseph, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.  **ON BRIEF**: John J. Korzen, Director, Kathleen A. Bradway, Third-Year Student, Appellate Advocacy Clinic, WAKE FOREST UNIVERSITY SCHOOL OF LAW, Winston-Salem, North Carolina, for Appellant.  Ripley Rand, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greensboro, North Carolina, for Appellee.

GREGORY, Circuit Judge:

Joseph Newbold pleaded guilty in 2005 to being a felon in possession of a firearm. At sentencing, the district court found he possessed three prior North Carolina state court convictions that triggered enhancements under the Armed Career Criminal Act (ACCA), including a fifteen-year mandatory-minimum prison term. Newbold objected that at least one of these convictions should not have been considered a predicate "serious drug offense" because it was not punishable by a term of ten years of imprisonment. On this basis, he continued to challenge his designation as an armed career criminal on direct appeal, by 28 U.S.C. § 2255 motion, and by petition to the Supreme Court. The Supreme Court granted Newbold's petition and vacated our decision affirming the district court's denial of the § 2255 motion. It remanded the case to us for consideration in light of Miller v. United States, 735 F.3d 141 (4th Cir. 2013), which declared United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), retroactively applicable on collateral review.

For the reasons that follow, we conclude that, pursuant to Miller, a petitioner may challenge on collateral review a Simmons error resulting in his erroneous designation as an armed career criminal. We deny the government's motion to remand the case to the district court, and we vacate Newbold's sentence and remand for further proceedings consistent with this opinion.

2

On September 8, 2005, Newbold pleaded guilty to distributing 5.3 grams of 5-Methoxy-alpha-methyltryptamine in violation of 21 U.S.C. § 841(a)(1); money laundering in violation of 18 U.S.C. § 1956(a)(3)(B); and possessing a firearm in violation of 18 U.S.C. § 922(g)(1). The Presentence Investigation Report (PSR) grouped the three counts and used the felon in possession count, because it produced the highest adjusted offense level, to determine the Sentencing Guidelines calculations for the group. After a three-level reduction for acceptance of responsibility, the PSR calculated an offense level of 31 and a criminal history category of VI. Although Newbold also qualified as a career offender, the PSR used the armed career criminal Guideline because it resulted in a higher offense level. See U.S.S.G. § 4B1.4(b). The PSR cited three North Carolina convictions from 1980, 1981, and 1984 as the basis for enhanced penalties under 18 U.S.C. § 924(e) and the corresponding Section 4B1.4 of the Guidelines.[1] It therefore recommended a range of 188-235 months, or 15.7-19.6 years, while also noting a statutory mandatory-minimum prison term of fifteen years. Newbold entered written objections to these ACCA enhancements, which the district court overruled. He received a

---

[1] These convictions were docket numbers 79CRS46698 from 1980, 81CRS17405 from 1981, and 83CRS75483 from 1984.

sentence of 225 months' imprisonment, or 18.8 years, on each count to run concurrently, followed by three years of supervised release on the first two counts and five years on the third count.

Newbold appealed the armed career criminal designation, among other issues. He argued as he had below that his previous convictions should not count as ACCA predicates. United States v. Newbold, 215 F. App'x 289, 297 (4th Cir. 2007) (unpublished). The ACCA's fifteen-year, mandatory-minimum applies to anyone who violates § 922(g) and has three previous serious drug offense convictions. See 18 U.S.C. § 924(e)(1); see also U.S.S.G. § 4B1.4 (establishing minimum offense level and criminal history category for any defendant "who is subject to an enhanced sentence under the provisions of 18 U.S.C. § 924 [a]s an armed career criminal"). "Serious drug offense" is defined in pertinent part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii) (emphasis added). Newbold contended that, for each previous conviction, he received a statutorily-prescribed, presumptive term of

4

imprisonment of less than ten years.[2]  <u>Newbold</u>, 215 F. App'x at 297-98.  Since there were no aggravating factors present in those cases that could have subjected him to punishment above the presumptive term, he argued the crimes were not serious drug offenses.  <u>Id.</u>

Applying <u>United States v. Harp</u>, 406 F.3d 242 (4th Cir. 2005), we found Newbold's argument "clever" but unavailing. <u>Newbold</u>, 215 F. App'x at 298.  In this pre-<u>Simmons</u> era, we adhered to the now-defunct rule that Newbold's previous convictions could be considered punishable by ten years if the sentencing law allowed for the possibility of <u>any</u> defendant – such as a defendant with the worst possible criminal history – to be sentenced to ten years' imprisonment for the same crime, regardless of the maximum punishment applicable to the circumstances of the instant defendant.  <u>See</u> <u>id.</u>; <u>Harp</u>, 406 F.3d at 246.  In 2008, Newbold raised the same challenge in his § 2255 motion to vacate his sentence, which was denied a year later while <u>Harp</u> was still good law.  <u>Newbold v. United States</u>, Nos. 1:08CV698, 1:05CR262-1, 2009 WL 2243642 (M.D.N.C. July 27, 2009).

---

[2] In our earlier opinion, we mistakenly wrote that Newbold's previous drug convictions "each carried a presumptive penalty of no more than six years."  <u>Newbold</u>, 215 F. App'x at 297.  The presumptive term for each Class H felony was in fact three years.  <u>See</u> N.C. Gen. Stat. § 15A-1340.4(f)(6) (1983) (repealed effective Oct. 1, 1994).

Newbold appealed the district court's denial of his § 2255 motion in the midst of several changes to our Circuit precedent. First, we overruled Harp in Simmons. 649 F.3d at 241. Simmons presented the question of whether that defendant's previous drug crime counted as a predicate "felony drug offense" under the Controlled Substances Act (CSA), which is defined as an "offense that is punishable by imprisonment for more than one year." Id. at 239 (quoting 21 U.S.C. § 802(44)). The maximum aggravated penalty Simmons could have received as a first-time offender was eight months of community punishment. Id. at 241. But, had he been a recidivist, and had certain aggravating factors been present, Simmons could have received a sentence exceeding twelve months' imprisonment under state law. Id. at 240-41. Relying on the reasoning in Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010), we rejected the argument that these hypothetical aggravating factors made his offense "punishable" by more than one year in prison. Simmons, 649 F.3d at 243-45. We held his conviction could not be considered a CSA predicate triggering that statute's mandatory-minimum term of imprisonment. See id. at 247.

Thereafter, in 2011, we granted Newbold a partial certificate of appealability on the issue of whether he was entitled to relief in light of Carachuri-Rosendo, as applied in Simmons. However, we were forced to subsequently affirm the

6

denial of his motion to vacate because, after granting the certificate, we decided in United States v. Powell, 691 F.3d 554 (4th Cir. 2012), that Carachuri-Rosendo was not retroactively applicable on collateral review. 691 F.3d at 559-60. That left Newbold with a last chance to petition the Supreme Court for certiorari, which he did in May 2013. In another twist, while that petition was pending, we decided Miller v. United States, 735 F.3d 141 (4th Cir. 2013), which declared that Simmons was retroactive. Id. at 146 (explaining that Simmons altered the class of persons that the law punishes to announce a new, substantive rule).

On January 13, 2014, the Supreme Court granted Newbold's petition and remanded to this Court for further consideration in light of Miller. Newbold v. United States, 134 S. Ct. 897 (2014) (mem.). Thus presented, somewhat miraculously, with Newbold's timely § 2255 petition, we granted an expanded certificate of appealability[3] and appointed counsel. The government subsequently submitted a motion to remand the case to the district court to resolve the issue in the first instance,

---

[3] In addition to reconsideration in light of Miller, the certificate also instructed the parties to address the potential effect, if any, of the original panel opinion in Whiteside v. United States, 748 F.3d 541 (4th Cir. 2014), which had not yet been reversed en banc, 775 F.3d 180 (4th Cir. 2014). The en banc opinion in Whiteside, which never reached the question of whether sentencing errors are cognizable on collateral review, does not affect this case.

7

on which we reserved a decision pending oral argument. Considering the lengthy history of Newbold's case, and that we have everything before us to decide this purely legal question, we deny the government's motion.

## II.

The government concedes, as it must, that Simmons is a retroactively applicable, substantive rule of law. Miller, 735 F.3d at 147. Still, we must ensure that the sentencing error Newbold seeks to challenge is cognizable on collateral review. We determine it is.

Section 2255 allows a federal prisoner to move to set aside a sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Importantly, the statute "was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." Davis v. United States, 417 U.S. 333, 343 (1974); see also United States v. Hayman, 342 U.S. 205, 219 (1952) ("Nowhere in the history of Section 2255 do we find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions."). A non-constitutional error, however, may only

8

serve as a basis for collateral attack when it involves "a fundamental defect which inherently results in a complete miscarriage of justice." United States v. Addonizio, 442 U.S. 178, 185 (1979) (internal quotation marks omitted); see also Hill v. United States, 368 U.S. 424, 428 (1962).

Our Circuit has not yet defined the entire universe of errors qualifying as "fundamental defects." On the one hand, we know that a post-conviction change in the law that renders the defendant's conduct no longer criminal can be corrected by § 2255 motion. See Davis, 417 U.S. at 346-47; see also Miller, 735 F.3d at 142. At the other end of the spectrum, we have held that "ordinary misapplication of the guidelines . . . does not amount to a miscarriage of justice." United States v. Mikalajunas, 186 F.3d 490, 496 (4th Cir. 1999). It is unclear what might constitute an extraordinary misapplication, but we have recently held that a mistaken career offender designation is not cognizable on collateral review. See United States v. Foote, ___ F.3d ___, No. 13-7841, 2015 WL 1883538, at *1 (4th Cir. Mar. 25, 2015); id. at *9-*11 (recognizing as cognizable on collateral review those sentencing errors, post-Booker v. United States, 543 U.S. 220 (2005), in cases of actual innocence and sentences issued above the statutory maximum).

This case does not present another occasion to debate whether a mistake made in calculating a defendant's advisory

9

Guidelines range results in a fundamental miscarriage of justice. Here, Newbold challenges not a Guidelines error, but his erroneous designation as an armed career criminal under the ACCA. The career offender Guideline was never used to calculate his sentencing range. And, his case lacks the pitfalls preventing us from providing relief to previous petitioners, like Deangelo Whiteside.[4] He is not in procedural default. The government does not present, and we are not aware of, any other potential ACCA predicate offenses in his criminal history.[5] Had the district court not found Newbold an armed career criminal, the circumstances of his sentencing would have been significantly different. Newbold would not have been subject to a fifteen-year mandatory-minimum term of imprisonment. See 18

---

[4] We refused to equitably toll AEDPA's statute of limitations for Whiteside, 775 F.3d at 186, even despite the Supreme Court's emphasis on the need for "flexibility" and "avoiding mechanical rules" in a court's exercise of its equitable powers, Holland v. Florida, 560 U.S. 631, 650 (2010) (internal quotation marks omitted).

[5] In United States v. Pettiford, 612 F.3d 270 (4th Cir. 2010), we concluded that a petitioner could not establish that his sentence was unlawful because vacatur of two prior convictions did not render his ACCA sentence invalid in light of three remaining predicate convictions in his record. Id. at 277-78. While Newbold's PSR indicated he might possess more than three qualifying serious drug offenses, the government points to none. We note that the only other felony controlled substance offense in Newbold's record occurring on a date separate from those on which the alleged predicate offenses occurred is a 1984, Class I felony for which the maximum penalty was five years' imprisonment. N.C. Gen. Stat. § 14-1.1(a)(9) (1981) (repealed effective Oct. 1, 1994).

10

U.S.C. § 924(e)(1). He would have been subject to a ten year maximum term on the felon in possession count. See id. § 924(a)(2).

Accordingly, Newbold's § 2255 motion exposes the sentence he received on the felon in possession count as an illegal one. On this count, the district court imposed 225 months, or 18.8 years. However, had Newbold been convicted under § 922(g) without three previous serious drug offenses, he would have faced a statutory maximum penalty of 10 years. 18 U.S.C. § 924(a)(2). Such circumstances, where "a change in law reduces the defendant's statutory maximum sentence below the imposed sentence, have long been cognizable on collateral review."[6] Welch v. United States, 604 F.3d 408, 412-13 (7th Cir. 2010),

---

[6] We further note that the district court was simultaneously presented with a Guidelines range of 188-235 months, or 15.7-19.6 years, and what it thought was a statutory, fifteen-year mandatory-minimum term. This erroneously-imposed sentencing floor is problematic on its own. See Alleyne v. United States, 133 S. Ct. 2151, 2160 (2013) ("It is impossible to dissociate the floor of a sentencing range from the penalty affixed to the crime."). In particular, it created the mistaken impression that the district court had no discretion to vary downward from the low end of Newbold's range. See Hicks v. Oklahoma, 447 U.S. 343, 346 (1980) (holding that a defendant has a "substantial and legitimate expectation" under the Fourteenth Amendment to be deprived of his liberty only to the extent determined by the trier of fact "in the exercise of its statutory discretion"); cf. Brown v. Caraway, 719 F.3d 583, 588 (7th Cir. 2013) (permitting challenge to a career offender designation from the pre-Booker era, when the Sentencing Guidelines had the force of law, as a "fundamental defect that constitutes a miscarriage of justice" in a § 2241 proceeding).

11

cert denied, 131 S. Ct. 3019 (2011); see also 28 U.S.C. § 2255(a) (permitting petitioner to seek relief where "the sentence was in excess of the maximum authorized by law"). It is axiomatic that "there are serious, constitutional, separation-of-powers concerns that attach to sentences above the statutory maximum penalty authorized by Congress," for it is as if the defendant "is being detained without authorization by any statute." Bryant v. Warden, 738 F.3d 1253, 1283 (11th Cir. 2013), reh'g en banc denied, (11th Cir. 2014). Thus, a defendant who "does not constitute an armed career criminal . . . [has] received a punishment that the law cannot impose upon him." United States v. Shipp, 589 F.3d 1084, 1091 (10th Cir. 2009) (internal quotation marks omitted) (citing Schriro v. Summerlin, 542 U.S. 348, 352 (2004)). That is exactly the case with Newbold here.

For these reasons, Newbold may challenge his sentence on collateral review. See Foote, ___ F.3d ___, 2015 WL 1883538, at *11 (recognizing a sentence issued in excess of the maximum authorized by law as a fundamental defect); Welch, 604 F.3d at 412-13 (permitting a § 2255 challenge to an erroneous armed career criminal designation on basis that the defendant received an illegal sentence); Shipp, 589 F.3d at 1086, 1091 (determining a defendant's due process rights were violated where he was erroneously sentenced as an armed career criminal). Being

12

satisfied that Newbold's challenge is cognizable under § 2255, we now move to the merits of the case.

III.

On appeal, Newbold challenges only the use of his 1984 conviction as an ACCA predicate. We review this legal question of statutory interpretation de novo. United States v. Washington, 629 F.3d 403, 411 (4th Cir. 2011); United States v. Brandon, 247 F.3d 186, 188 (4th Cir. 2001). As we describe below, an examination of North Carolina's sentencing regime, as well as Newbold's criminal history and the circumstances of his offense, shows that he should never have been sentenced as an armed career criminal.

A.

At the time of Newbold's 1984 conviction, North Carolina sentenced criminal defendants pursuant to the Fair Sentencing Act. Fair Sentencing grouped felonies into different classes and assigned each class a baseline, "presumptive" term of imprisonment. See N.C. Gen. Stat. § 15A-1340.4 (1983) (repealed effective Oct. 1, 1994). It also set a maximum, aggravated term of imprisonment for each offense class. See id. § 14-1.1 (1981) (repealed effective Oct. 1, 1994). By law, the judge could only deviate from the presumptive term by finding and recording aggravating or mitigating factors. Id. § 15A-1340.4(b). For

13

example, if the judge found aggravating factors by a preponderance of the evidence, she could award a sentence somewhere in the range between the presumptive term and the maximum aggravated term. Id. The judge was excused, however, from making any such aggravating or mitigating findings if, in pertinent part: 1) she imposed a prison term pursuant to a plea arrangement; 2) she imposed the presumptive term; or 3) two or more convictions were consolidated for judgment and the prison term did not exceed the total of the presumptive terms for each felony.[7] Id.

In Newbold's case, his alleged ACCA predicate was one of eight different offenses consolidated into two different judgments pursuant to an April 18, 1984 guilty plea.[8] One

---

[7] Under the successor to the Fair Sentencing Act, the Structured Sentencing Act, the sentencing court imposed a felony sentence contingent on the offense class and the defendant's "prior record level." Simmons, 649 F.3d at 240. The court would derive a defendant's minimum and maximum prison term by matching the two values on a statutory table setting forth a mitigated, presumptive, and aggravated sentencing range. Id. Structured Sentencing also provided several procedural protections not available under Fair Sentencing, including requirements that: the judge make written findings to permit a departure from the presumptive range; the government give thirty-days' notice of its intent to prove aggravating factors; and the jury find the existence of those factors beyond a reasonable doubt. Id.

[8] On brief and at oral argument, the parties represented that Newbold pleaded guilty to seven different drug offenses. However, comparing the offenses in the judgment forms to those in the plea transcript and PSR, there were actually eight separate offenses. See J.A. 276, 398-400 (referencing docket (Continued)

14

consolidated judgment shows he received a seven-year sentence for three of the offenses, while the second shows a ten-year sentence for the remaining five. While reflecting the larger, seven- and ten-year sentences, the judgments do not specify how many years were awarded for each individual offense. They do, however, list each offense's statutorily-prescribed, presumptive and maximum aggravated penalties. All told, Newbold pleaded guilty to eight offenses in exchange for a seventeen-year sentence, even though the presumptive terms for each of the individual eight offenses added up to nineteen years.[9] The alleged federal predicate was a possession with intent to sell and deliver a controlled substance offense (the "PWID" offense). This PWID offense was a Class H felony, which carried a presumptive term of three years, and a maximum aggravated penalty of ten years.[10] Id. § 15A-1340.4(f)(6); id. § 14-

---

numbers 83 CRS 75479/80/81/82/83/84/87 and a felony manufacture of a Schedule II controlled substance offense without any docket number). The plea transcript also reflects dismissal of an additional misdemeanor, no. 83 CRS 71076, not listed in the judgments. J.A. 276.

[9] The eight offenses included three Class H and four Class I felonies, as well as one misdemeanor, for which Fair Sentencing prescribed three-, two-, and two-year presumptive terms, respectively. See J.A. 278-81; N.C. Gen. Stat. § 15A-1340.4 (1983) (repealed effective Oct. 1, 1994).

[10] Although the PSR cites this particular offense as the ACCA predicate, there are three such Class H felonies contained (Continued)

15

1.1(a)(8).    The  judgments  do  not  list  any  aggravating  or
mitigating factors.

B.

According  to  Newbold,  he  never  could  have  received  the
aggravated  penalty  of  ten  years'  imprisonment  for  his  PWID
offense.    As  there  are  no  aggravating  factors  listed  on  the
judgment,  Newbold  maintains  he  received  the  presumptive,  three-
year  term  for  this  Class  H  offense.    To  nevertheless  count  it  as
an  ACCA  predicate  would  violate  the  rule  of  Simmons,  argues
Newbold,  which  teaches  that  "federal  courts  should  not  apply
hypothetical  sentencing  enhancements"  thereby  "lumping  all
defendants  –  and  virtually  all  crimes  –  into  the  same  category
for  the  purposes  of  federal  sentencing."    649  F.3d  at  249-50.

We  agree  that  Simmons  governs  the  outcome  here.    The
controlling  inquiry,  however,  is  not  what  sentence  Newbold
actually  received  for  the  individual  PWID  offense  within  the
larger,  consolidated  judgment.    See  United  States  v.  Valdovinos,
760  F.3d  322,  327  (4th  Cir.  2014).    Instead,  we  must  determine
the  maximum  penalty  that  Newbold  potentially  faced  given  his
particular  offense  and  his  particular  criminal  history.    Such  an
analysis  of  "the  maximum  possible  sentence  that  the  particular

in  the  two  consolidated  judgments,  neither  of  which  lists  any
aggravating  factors.    Our  analysis  applies  equally  to  all
offenses  of  this  class.

16

defendant could have received" requires examination of a defendant's "offense class" and "the applicability of the aggravated sentencing range."[11] <u>United States v. Kerr</u>, 737 F.3d 33, 37 (4th Cir. 2013). This is in contrast to our past practice under <u>Harp</u>, where we looked to "the maximum <u>aggravated</u> sentence that could be imposed for th[e] crime upon a defendant with the worst possible criminal history." 406 F.3d at 246. Ever since <u>Simmons</u> overruled <u>Harp</u>, where there are no aggravating factors, we consider the presumptive term to be the maximum applicable punishment. We have held so even in cases where the defendant actually received a sentence below the presumptive term, either due to the existence of mitigating factors, <u>Kerr</u>, 737 F.3d at 38-39, or pursuant to a statutorily binding plea agreement, <u>Valdovinos</u>, 760 F.3d at 327.

Newbold has conclusively demonstrated that there is nothing in the record supporting the government's contention that his PWID offense was punishable by ten years. As discussed, the alleged federal predicate was a Class H offense. The North

---

[11] Under Structured Sentencing, we also look to the defendant's "prior record level," a value assigned to his criminal history. <u>Kerr</u>, 737 F.3d at 37. The Fair Sentencing law did not treat a defendant's criminal history as a "prior record level," but instead considered recidivism as an aggravating factor. § 15A-1340.4(a)(1)(o) (including as an aggravating factor any prior conviction of more than 60 days' confinement). Therefore, in applying <u>Simmons</u> to Fair Sentencing, we need only look to the offense class and applicability of the aggravated sentencing range.

Carolina legislature assigned to this felony class a presumptive term of three years, and a maximum aggravated penalty of ten years; that is, the law established an aggravated range, above the presumptive term, of three to ten years. An examination of the conviction itself, as Simmons instructs, 649 F.3d at 243, reveals that the state court judgment contains no aggravating factors supporting a sentence within the aggravated range. Nor does Newbold's plea transcript reflect his admission of any such facts. There is simply nothing to support the idea that Newbold ever faced more than the presumptive term of three years for the state court, PWID conviction that the government now seeks to use as a federal ACCA predicate.[12] See United States v. Lockett, 782 F.3d 349, 352 (7th Cir. 2015) (refusing to permit the use of prior state court convictions as qualifying ACCA offenses where "there is no indication in the record . . . [of] ever [being] exposed to the Illinois recidivist enhancement that would have

---

[12] We further note that the sentence itself does not even support the idea that the PWID offense alone was punishable by ten years. Cf. Lockett, 782 F.3d at 352 (reasoning that the alleged federal predicate offense could "only be evaluated in light of the actual . . . sentence imposed" where the record of conviction did not contain findings of recidivism enhancements). To recall, Newbold received ten years on five different charges. If the Class H, PWID offense had been punishable by ten years, this would mean Newbold received zero days of imprisonment for each of the other four offenses. We find it highly improbable that this was the sentencing court's logic, especially since the consolidated judgment included not one, but two of the same, Class H offenses.

18

brought [the] maximum [state court conviction penalty] up to the ACCA-triggering minimum").

Despite this lack of support in the record, the government asserts that we may consider the Class H offense punishable by ten years. Tellingly, the government does not actually argue that there were aggravating circumstances surrounding Newbold's PWID offense such that receiving a ten-year term was ever a possibility. Instead, because the Fair Sentencing Act did not require the state court to record aggravating factors in the case of a plea agreement, see N.C. Gen. Stat. § 15A-1340.4(b), the government asks us to assume the existence of unrecorded aggravating factors. Engaging in this type of speculation, however, would turn Simmons on its head. The absence of any aggravating factors in the record may have been sufficient to support Newbold's sentence under state law, but it cannot change our inquiry under Simmons for federal sentencing purposes. Such an approach would return us to the inexorable problem of the hypothetical, worst-case defendant. "Simmons, and Carachuri before it, teach that we may not measure a defendant's maximum punishment based on a hypothetical charge, a hypothetical criminal history, or other 'facts outside the record of conviction.'" Valdovinos, 760 F.3d at 327 (quoting Simmons, 649 F.3d at 244). The government's argument is therefore unavailing, as it is only by entertaining the existence of

19

aggravating factors "outside the record of conviction" that would allow us to say, hypothetically, that Newbold could have received ten years for the PWID crime.[13]  Simmons, 649 F.3d at 244; see also Lockett, 782 F.3d at 352.

Accordingly, when we follow Simmons to consider not the hypothetical defendant, but the specific criminal history of Newbold and the circumstances of his offense, it is clear that the maximum sentence Newbold faced for the PWID offense was the presumptive, three-year term, meaning he cannot be considered an armed career criminal.  It is of no moment that Simmons involved a different federal statute.  See Kerr, 737 F.3d at 34-35 (applying Simmons to the ACCA and finding the defendant possessed the requisite violent felonies making him an armed career criminal); United States v. Norman, 462 F. App'x 307, 310 (4th Cir. 2012) (unpublished) (applying Simmons to the ACCA and finding the defendant's prior state conviction did not qualify as a serious drug offense).  Indeed, there is no reason why Simmons should not apply to the ACCA when we had previously

_____

[13] If we were to entertain hypotheticals, the fact that Newbold received a seventeen-year sentence for eight offenses between the two consolidated judgments, even though the presumptive terms of each offense added up to nineteen years, suggests that there were unrecorded mitigating, not aggravating, factors at play.  The lack of any recorded factors in the record, however, should neither advantage nor disadvantage Newbold.

20

adjudicated ACCA predicates under the rule of Harp. See United States v. Williams, 508 F.3d 724, 729 (4th Cir. 2007).

We must also reject the government's argument that McNeill v. United States, 131 S. Ct. 2218 (2011), obligates a contrary result. As we have previously explained, nothing in McNeill undermines our Simmons holding. Simmons, 649 F.3d at 245 n.6. The government also overlooks the fact that the defendant in that case never raised the argument asserted here by Newbold. McNeill principally involved whether a federal sentencing court should consult the state law at the time of the state conviction, or that in place at the time of the federal prosecution, when deciding if the prior offense was punishable by ten years. 131 S. Ct. at 2220. A unanimous Supreme Court instructed us to look to the law at the time of the state conviction. Id. Of course, the Supreme Court also found that the defendant's drug offense, for which he served ten years, was properly considered an ACCA predicate. As we determined in Simmons, "crucial to the McNeill holding was the fact that North Carolina courts actually sentenced [McNeill] to ten years in prison." 649 F.3d at 245 n.6 (internal quotation marks omitted, alteration in original). This outcome is in no way inconsistent with our holding today. Simmons, as well as common sense, dictates that where a defendant actually receives a ten-year

sentence, clearly that offense is punishable by ten years for the purposes of the ACCA.

## IV.

We remain ever-mindful that "[j]ustice consists not only of convicting the guilty, but also of assigning them a lawful and just punishment." Mikalajunas, 186 F.3d at 502 (Murnaghan, J., dissenting). Newbold does not possess the requisite, predicate "serious drug offenses" making him an armed career criminal. His sentence is

VACATED AND REMANDED.