RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 18a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MATTHEW GARY RICHARDSON,

                *Petitioner-Appellant*,

    *v.*

UNITED STATES OF AMERICA,

                *Respondent-Appellee*.

No. 17-5517

───────────────

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
Nos. 3:14-cr-00025-1; 3:16-cv-00398—Thomas A. Varlan, Chief District Judge.

Argued: March 7, 2018

Decided and Filed: May 15, 2018

Before: COLE, Chief Judge; WHITE and BUSH, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ARGUED:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee. **ON BRIEF:** Laura E. Davis, FEDERAL DEFENDER SERVICES OF EASTERN TENNESSEE, INC., Knoxville, Tennessee, for Appellant. Luke A. McLaurin, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

───────────────

## OPINION

───────────────

HELENE N. WHITE, Circuit Judge. Petitioner Matthew Richardson appeals the district court's denial of his 28 U.S.C. § 2255 motion to set aside his sentence, challenging his

designation as an armed career criminal under 18 U.S.C. § 924(e), the Armed Career Criminal Act ("ACCA").  We **AFFIRM**.

## I.  BACKGROUND

In 2012, after attempting to sell a sawed-off shotgun, Richardson pleaded guilty to possessing a firearm as a felon, in violation of 18 U.S.C. § 922(g)(1).  Based on Richardson's three prior Georgia burglary convictions,[1] each of which qualified as a predicate "violent felony" under the ACCA, the district court determined that Richardson was an armed career criminal and sentenced him to 180 months' imprisonment.  Richardson did not appeal his sentence, but now brings this § 2255 motion alleging that in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015), his prior Georgia burglary convictions no longer qualify as predicate offenses under the ACCA.  The district court denied the motion,[2] and this timely appeal followed.

## II.  THE APPLICABLE LAW

We review de novo whether Richardson's prior convictions qualify as predicate violent felonies under the ACCA.  *United States v. Hockenberry*, 730 F.3d 645, 663 (6th Cir. 2013) (citation omitted).  The ACCA provides for a mandatory minimum sentence of 180 months when a felon found guilty of possessing a firearm was previously convicted of at least three prior "serious drug offense[s]" or "violent felon[ies]."  18 U.S.C. § 924(e)(1).  As relevant here, the ACCA defines "violent felony" to include "burglary."  *Id.* § 924(e)(2)(B)(ii).

However, not every "burglary" conviction qualifies as a predicate offense under the ACCA.  As the Supreme Court explained, only "generic burglary"—defined as "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime"—qualifies as a violent felony under the enumerated-crimes clause of the ACCA.  *Taylor v. United States*, 495 U.S. 575, 598 (1990).  Thus, we must determine whether Richardson's three prior Georgia burglary convictions qualify as generic burglaries.  To do so, we employ the "categorical" approach.  *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).

---

[1]Richardson committed two of his burglaries in 1999 and one in 2003.

[2]The district court initially refused to grant a certificate of appealability.  Upon Richardson's motion, the district court reconsidered its decision and granted his request for a certificate of appealability.

Under the categorical approach, we must determine "whether the elements of the crime of conviction sufficiently match the elements of generic burglary." *Id.* The Supreme Court has repeatedly cautioned that a court may look only at the elements of the statute of conviction and not at the underlying facts of the offense. *Taylor*, 495 U.S. at 599–602. If the statute's elements are the same as or narrower than the elements of the generic offense, the statutory offense qualifies as a predicate offense because the commission of the offense necessarily constitutes commission of the generic offense. *Id*. at 599.

This task "is straightforward when a statute sets out a single (or 'indivisible') set of elements to define a single crime." *Mathis*, 136 S. Ct at 2248. However, faced with an alternatively phrased statute, courts must first determine whether the statute lists elements in the alternative and thus creates a separate crime associated with each alternative element, or whether the statute creates only a single crime and "spells out various factual ways," or "means," "of committing some component of the offense." *Id.* at 2249.

As *Mathis* explained, "[e]lements are the constituent parts of a crime's legal definition— the things the prosecution must prove to sustain a conviction." *Id.* at 2248 (quotation marks omitted). "At a trial, they are what the jury must find beyond a reasonable doubt to convict the defendant; and at a plea hearing, they are what the defendant necessarily admits when he pleads guilty." *Id.* Means, on the other hand, "are mere real-world things—extraneous to the crime's legal requirements." *Id.* "They are circumstances or events having no legal effect or consequence . . . [and] need neither be found by a jury nor admitted by a defendant." *Id.* (quotation marks and alterations omitted). As we recently explained:

> In determining whether statutory alternatives constitute elements or means, [*Mathis*] clarified that sentencing courts should look first to state law, including judicial interpretations of the criminal statute by state courts. Alternatively, the statute itself may provide the answer. A statute might explicitly identify which things must be charged (and so are elements) and which need not be (and so are means). Moreover, if statutory alternatives carry different punishments, then under *Apprendi* they must be elements. On the other hand, if a statutory list is drafted to offer "illustrative examples," then it includes only a crime's means of commission.

State law can be expected to provide a clear answer to the elements-means dilemma in many cases, but, if it does not, a sentencing court may briefly look to the record of the prior conviction. Sentencing courts encountering this situation may take a "peek" at the record documents for the sole and limited purpose of determining whether the listed items are elements of the offense. Indictments, jury instructions, plea colloquies and plea agreements will often reflect the crime's elements and so can reveal whether a statutory list is of elements or means. If the charging documents reiterate all the terms of the law, then each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. The same is true if those documents use a single umbrella term like "premises." On the other hand, the record could indicate that the statute contains a list of distinct elements by referencing one alternative term to the exclusion of all others. Only if the record indicates that the listed items are elements, not alternative means, may the sentencing courts examine the *Shepard* documents to determine whether the crime the defendant was convicted of constituted a generic burglary. The Court cautioned, however, that such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy *Taylor*'s demand for certainty when determining whether a defendant was convicted of a generic offense.

*United States v. Ritchey*, 840 F.3d 310, 318 (6th Cir. 2016) (internal quotations, citations, quotation marks, and alterations omitted).

If an alternatively phrased statute sets forth alternative *elements* of an offense, the statute is divisible and courts may proceed to apply the "modified categorical" approach to identify which crime of the alternative crimes set forth in the statute was the basis of the defendant's conviction. *Mathis*, 136 S. Ct at 2248–49. The modified categorical approach permits us to look at a limited class of documents from the record of the prior conviction (*Shepard* documents) to determine which crime, with what elements, the defendant was convicted of, before comparing that crime's elements to the generic offense. *Id.*; *see Shepard v. United States*, 544 U.S. 13, 26 (2005) ("We hold that enquiry under the ACCA to determine whether a plea of guilty to burglary defined by a nongeneric statute necessarily admitted elements of the generic offense is limited to the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information.").

Here, it is undisputed that the Georgia burglary statute at issue[3] criminalizes more conduct than the generic definition of burglary set forth in *Taylor* because it includes vehicles, railcars, watercraft, and aircraft in its list of locations covered by the statute. Thus, our first task is to determine whether the listed locations are alternative elements or alternative means of fulfilling an element. If the Georgia statute includes alternative locational elements, the statute is divisible and we must apply the modified categorical approach. If the statute contemplates alternative means of fulfilling the locational element, the statute is indivisible and subject only to the categorical analysis.

## III. THE ELEVENTH CIRCUIT'S *GUNDY* DECISION

In *United States v. Gundy*, the Eleventh Circuit applied the principles and tools outlined in *Mathis* to the Georgia burglary statute at issue here and found the statute to be divisible. 842 F.3d 1156, 1159–70 (11th Cir. 2016).

*Gundy* first found that the Georgia burglary statute is distinguishable from both the Iowa burglary statute found to be indivisible by the Supreme Court in *Mathis* and the Alabama burglary statute, which the Eleventh Circuit had previously found indivisible in *United States v. Howard*, 742 F.3d 1334, 1348 (11th Cir. 2014). Both the Iowa and Alabama statutes used a single term—"occupied structure" and "building," respectively—that was then defined in a separate statutory section to include non-generic types of locations. *Gundy*, 842 F.3d at 1165–67 (citations omitted). In contrast, the *Gundy* court reasoned, "the plain text of the Georgia statute has three subsets of different locational elements, stated in the alternative and in the disjunctive." *Id.* at 1167. Second, the court addressed state caselaw and found that in Georgia "a prosecutor must select, identify, and charge the specific place or location that was burgled," "the hallmark of a divisible statute." *Id.* Third, the court relied on a Georgia Supreme Court case stating that

---

[3]At the time of Richardson's burglary offenses, Georgia's burglary statute provided as follows:

A person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another or any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another or enters or remains within any other building, railroad car, aircraft, or any room or any part thereof. . . .

Ga. Code Ann. § 16-7-1(a) (1980).

the fact "that the [burglarized] vehicle was designed as a dwelling was an *essential element of the offense*." *Id.* at 1168 (quoting *DeFrancis v. Manning*, 271 S.E.2d 209, 210 (Ga. 1980)).

Having concluded that the statute is divisible, the *Gundy* court found that the state indictments, which charged the defendant in two prior cases with burglarizing a "dwelling house," and in five cases with burglarizing a "business house," "satisf[ied] *Taylor*'s demand for certainty that Gundy's convictions were for burglary of a building or other structure, which is generic burglary." *Id.* at 1170.

Judge Jill Pryor dissented, advancing four arguments. First, she would have relied on a Georgia Court of Appeals case suggesting that the type of location is not an element of Georgia burglary. *Id.* at 1172 (quoting *Lloyd v. State*, 308 S.E.2d 25, 25 (Ga. Ct. App. 1983)). Second, she looked to Georgia's model jury instructions that "list [] 'building or dwelling' as part of a single element." *Id.* at 1173. Third, she contended that the inclusion of the phrase "other such structure designed for use as the dwelling of another" in the second part of the statute's list of locations is indeterminate and precludes a finding of divisibility. *Id.* at 1172–73. Fourth, as to the "peek" at Gundy's records, she found them unavailing because indictments for five of Gundy's predicate crimes used the phrase "business house," which is not found in the statute. *Id.* at 1178.

The Eleventh Circuit declined to revisit *Gundy* en banc.[4]

## IV. DISCUSSION

Because Georgia law does not clearly answer whether the locations listed in Georgia's alternatively phrased burglary statute are means or elements of the offense, we "peek" at the records of Richardson's prior state convictions, which support the conclusion that the multiple locations listed in the statute are alternative elements, rather than alternative means. We thus conclude that the statute is divisible.

---

[4]The Supreme Court recently denied Gundy's petition for a writ of certiorari. *Gundy v. United States*, 138 S. Ct. 66 (2017).

**1. Georgia Burglary Statute's Text**

The Georgia burglary statute at issue does not set out different punishments for burglarizing different types of structures, so reference to the statutory text to see whether different punishments attach to the different variations provides no help. *Mathis*, 136 S. Ct. at 2256 ("If statutory alternatives carry different punishments, then under *Apprendi* they must be elements.").

Further, unlike the Iowa burglary statute at issue in *Mathis* and the Tennessee aggravated burglary statue at issue in our decision in *United States v. Stitt*, 860 F.3d 854, 857 (6th Cir. 2017), Georgia's burglary statute does not use a single locational term such as "occupied structure" (Iowa Code § 713.1) or "habitation" (Tenn. Code Ann. § 39-14-403), which is then separately defined by means of "illustrative examples." Nor does Georgia's burglary statute use the broad term "includes," unlike, for instance, the Alabama statute held indivisible in *Howard*, 742 F.3d at 1348. Thus, this inquiry is also of no help; although a statute with a single locational element that is separately defined is indivisible, the absence of a single locational element with a separate definition does not mean that a statute is divisible.

**2. Georgia Burglary Statute's Structure**

According to *Gundy*, the burglary statute creates three distinct and exhaustive categories of locations: "(1) dwelling house, or (2) building, vehicle, railroad car, watercraft, or other such structure designed for use as a dwelling, or (3) any other building, railroad car, aircraft, or any room or any part thereof." 842 F.3d at 1165. Further, *Gundy* held that the statute's repeated use of the disjunctive "or" indicates that those specifically listed locations are alternative elements of the offense. "Each of the three subsets enumerates a finite list of specific structures in which the unlawful entry must occur to constitute the crime of burglary. In doing so, the burglary statute has multiple locational elements effectively creating several different crimes." *Id.* at 1167. Focusing on the disjunctive nature of the statute does find some support in precedent. For instance, in *Descamps*, the Supreme Court explained that a statute "stating that burglary involves entry into a building *or* an automobile" is divisible. *Descamps v. United States*, 570 U.S. 254, 257 (2013).

However, *Gundy*'s conclusion that the statute's structure supports finding that the locations are elements is problematic. First, *Gundy*'s assertion that the statute has three subsets of different locational elements is not based on any Georgia authority (and our research reveals none). Second, even if *Gundy* is correct to rely on the disjunctive nature of the statute to divide it into three subsets, as the dissent in *Gundy* pointed out,

> *Mathis* makes clear that alternative phrasing is a necessary—but by no means sufficient—condition to read a statute as setting out alternative elements. *See* 136 S.Ct. at 2256 ("The first task for a sentencing court faced with an alternatively phrased statute is thus to determine whether its listed items are elements or means."). *Mathis* then lists two attributes of an alternatively phrased statute that would confirm its divisibility. First, "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Id.* Second, "a statute may itself identify which things must be charged (and so are elements) and which need not be (and so are means)." *Id.* Neither is present in this case, however. Absent these attributes, or something equally compelling, alternate phrasing is neutral with respect to the elements-versus-means inquiry.

*Gundy*, 842 F.3d at 1174 (Jill Pryor, J., dissenting).

### 3. Georgia Caselaw

The government argues that the clearest indication that the statute contains a locational element comes from the Georgia Supreme Court in *DeFrancis v. Manning*, 246 Ga. 307 (1980). In *Manning*, the indictment charged that the defendant

> unlawfully without authority and with intent to commit a theft therein entered that certain vehicle, same being a gray Ford truck, being the property of and owned by . . . , said truck being located on 10th Avenue West in the City of Cordele, Crisp County, Georgia, at the time of said entry therein by the said accused.

*Id.* at 307. The Georgia Supreme Court set aside the defendant's burglary conviction because the indictment did not charge that the vehicle was "designed for use as a dwelling." *Id.* at 308. As the Georgia Supreme Court held, "that the vehicle was designed as a dwelling was an *essential element* of the offense which must be alleged." *Id.* (emphasis added).

The government reads too much into *Manning*. Again, we agree with the *Gundy* dissent:

> In [*Manning*], the Georgia Supreme Court upheld a lower court's decision overturning a defendant's conviction for burglarizing a truck. 271 S.E.2d at 210. The appellate court held the conviction was invalid because Georgia law only criminalized entering without authority "any . . . vehicle . . . designed for use as the dwelling of another," *id.* (quoting O.C.G.A. § 26-1601 (1968)), and "no proof was offered at trial that the truck was 'designed for the use as the dwelling of another.'" *Id.* For the same reason, the [*Manning*] court held that the indictment was flawed because it failed to allege that the truck was designed as a dwelling. *See id.* This omission was not error because—as the majority incorrectly surmises—Georgia burglary indictments must always include a single type of location. The question in [*Manning*] was not whether the burglary occurred in a truck versus a building, but rather whether the truck met the statute's requirement that it be designed for use as a dwelling. Thus, the indictment in [*Manning*] was flawed because it did not allege a crime at all. In other words, [*Manning*] did not bar a burglary indictment from listing "building, dwelling, truck, or railroad car designed for use as a dwelling." It merely said that an indictment must specify a location that the statute makes it a crime to enter.

*Gundy*, 842 F.3d at 1176–77 (Jill Pryor, J., dissenting). Stated differently, because breaking into a car not adapted for overnight accommodation is not burglary, *Manning* emphasized that to trigger the burglary statute, it was "essential" that the "adapted for overnight accommodation" language be included in the indictment and proved at trial.

Further, decisions issued after *Manning* reveal that Georgia's appellate courts have not read *Manning* to hold that a specific burglary location is an element of the offense. Notably, three years after *Manning*, the Georgia Court of Appeals held that "there are two essential elements which must be established by the State: 1) lack of authority to enter the dwelling or building; 2) intent to commit a felony or theft." *Lloyd v. State*, 308 S.E.2d 25, 25 (Ga. Ct. App. 1983).

But *Lloyd* too does not resolve the threshold elements/means inquiry. Despite *Lloyd*'s statement about the two elements of burglary, *Lloyd* "had nothing to do with the locational element" at issue here, *Gundy*, 842 F.3d at 1169, as the types of places that could be burglarized were not at issue in *Lloyd*. The sole issue in *Lloyd* was whether the evidence was sufficient to prove "lack of authority on the defendant's part to enter the building." 308 S.E.2d at 25. Thus,

although *Manning* does not "definitively answer[] the [threshold elements-versus-means] question," *Mathis*, 136 S. Ct. at 2256, neither does *Lloyd*.

Richardson also relies on *Weeks v. State*, 616 S.E.2d 852 (Ga. Ct. App. 2005), and *Sanders v. State*, 667 S.E.2d 396 (Ga. Ct. App. 2008), arguing that in *Weeks*

> [t]he indictment charged that [the defendant] entered the "dwelling house of another: to wit, Anthony Sexton." The proof at trial, however, showed that the house was under construction. The appellate court agreed that the incomplete building was not a dwelling, but found that "Week's [sic] argument is not a challenge to the sufficiency of the evidence, for the evidence sufficed to show that this was a building under the statute and therefore could be burglarized." In holding that proof that the structure was a "building," which was not the type of structure alleged in the indictment, did not raise a sufficiency argument, the court demonstrated that the type of structure was not an essential element of the offense. The jury need not find a specific type of structure - any structure would suffice. If the type of structure was an essential element of the offense, failure of proof on that issue would have sustained a sufficiency challenge because it would have automatically affected the defendant's substantial rights.
>
> * * *
>
> [*Sanders*] confronted the same issue . . . . Sanders was charged with entering "the dwelling house of another, to wit: Aaron Fox." The evidence at trial, however, did not establish that the building was a dwelling. Nonetheless, because the evidence was sufficient to find the place entered was a building, the court found that the evidence was sufficient to uphold the burglary conviction. Thus, under Georgia law, the type of structure need not be charged - and if one type of structure was actually charged, proof of a completely different type of structure is sufficient to uphold a finding of guilt - clearly establishing that the type of structure is not an element of the offense.

(Appellant's Br. at 12–13 (internal citations omitted).)

Richardson's assertion that both *Weeks* and *Sanders* "made clear that the type of structure is not an element of burglary" (*Id.* at 12) is unconvincing because neither *Weeks* nor *Sanders* actually held that the specific type of location is not an essential element of burglary. In each case, the defendants merely argued that "the evidence fatally varied from the allegations of the indictment." *Weeks*, 616 S.E.2d at 854; *see Sanders*, 667 S.E.2d at 399. Under Georgia law, whether a variance is fatal turns on whether "(1) . . . the accused [was] definitely informed as to the charges against him so that he [was] able to present his defense, and (2) [is] protected against

another prosecution for the same offense." *Battles v. State*, 420 S.E.2d 303, 305 (Ga. 1992). In both *Weeks* and *Sanders*, the appellate court held that the variances were not fatal because the description of the burgled structure in the indictment was sufficient and did not "impede[] [the defendant's] ability to present a subsequent defense or surprise him at trial, and [ensured that] he cannot be subjected to a subsequent prosecution for the burglary of the building in question." *Weeks*, 616 S.E.2d at 855. Thus, both *Weeks* and *Sanders* are more properly characterized as fatal-variance cases that, contrary to Richardson's assertions, do not definitively demonstrate that the locations listed in the Georgia burglary statute are alternative means of satisfying a single element.

Further, as the *Gundy* majority and the government here point out, the Georgia Court of Appeals has repeatedly held that "where the defendant is charged with burglary, the indictment must specify the location of the burglary," *Morris v. State*, 303 S.E.2d 492, 494 (Ga. Ct. App. 1983), and the prosecution must "prove the specific location of a burglary in order to obtain a conviction." *State v. Ramos*, 243 S.E.2d 693, 694 (Ga. Ct. App. 1978). Indeed, in every Georgia burglary case cited by Richardson in his brief, the indictment specified the particular type of location burglarized. *See Sanders*, 667 S.E.2d at 399 (a "dwelling house"); *Weeks*, 616 S.E.2d at 853 (same).[5] As *Gundy* held,

> [t]he U.S. Supreme Court has told us that "[a] prosecutor charging a violation of a divisible statute must generally select the relevant element from the list of alternatives." *Descamps*, 570 U.S. at ——, 133 S.Ct. at 2290. That the Georgia prosecutor must select and identify the locational element of the place burgled—whether the place burgled was a dwelling, building, railroad car, vehicle, or watercraft—is the hallmark of a divisible statute.

842 F.3d at 1167. However, the Georgia cases addressing indictment requirements take us only so far; they do not definitively establish that the specified burglary locations are alternative elements of the offense. The cases do not address the elements of the burglary statute; rather, they deal with notice to the accused and double jeopardy. As the *Gundy* dissent aptly observed,

---

[5]It is also notable that not one of the Georgia cases cited by Richardson holds that an indictment may charge a generic burglary (e.g., unauthorized entry into a "building or structure") but that a jury may instead find a defendant guilty of a non-generic burglary (e.g., unauthorized entry into an aircraft).

the [*Gundy*] majority misapprehends the purpose of requiring the burglary's location to be included in indictments. The majority speculates that the multiple types of locations listed in the Georgia burglary statute must be "why under Georgia law a prosecutor must select, identify, and charge the specific place or location that was burgled." . . . This speculation lacks support. Rather, as a case the majority cites makes clear, an indictment must include the location burglarized in order "to give the defendant ample opportunity to prepare a defense." *Morris*, 303 S.E.2d at 494. The many indictment cases on which the majority relies never considered whether the types of locations listed in Georgia's burglary statute are alternative elements or means of committing the crime because these cases were concerned only with the need to "inform the accused as to the charges against him so that he may present his defense and not . . . be taken by surprise" and to "protect the accused against another prosecution for the same offense." *Smarr v. State*, 317 Ga. App. 584, 732 S.E.2d 110, 115 (2012).

842 F.3d at 1176 (Jill Pryor, J., dissenting).

Finally, Richardson relies on Georgia's pattern jury instructions. He argues that because the instructions refer to the burglarized location only as "any building or dwelling" without listing the other locations enumerated in the statute (such as "aircraft"), the instructions support the conclusion that the type of location is not an element of burglary. (Appellant's Br. at 15–16 (citing Ga. Suggested Pattern Jury Instr., Vol. II, Crim. §§ 2.62.10, 2.62.20 [hereinafter Ga. Crim. Jury Instr.]).) Richardson also contrasts burglary's intent element with the locational list. Because there are two types of intent (to commit theft and to commit a felony), Georgia has two sets of jury instructions for burglary. Richardson thus surmises that the lack of separate instructions as to each location enumerated in the burglary statute indicates that location is not a statutory element.

However, the proposed jury instructions also do not resolve the elements/means inquiry. First, it appears that the phrase "any building or dwelling" was intended only as a placeholder; as the instructions direct, a trial judge should "[c]harge only the appropriate language" from the recommended instruction and "adapt parentheticals to the indictment and evidence." Ga. Crim. Jury Instr., Preamble to § 2.62.10. And the requirement that the instructions be modified to comport with the indictment is well-settled in Georgia. *See, e.g.*, *Childs v. State*, 357 S.E.2d 48, 58 (Ga. 1987) (stating that it "is error to charge the jury that a crime may be committed by either

of two methods, when the indictment charges it was committed by one specific method") (internal quotations marks, alterations, and citation omitted).

Second, although the relevant language of the burglary statute did not change from the pre-July-2012 version to the 2012-2017 version,**[6]** the language of the corresponding jury instructions did.**[7]** The jury instructions now list in parentheses each location enumerated in the statute. Thus, we would have to conclude that the statute is indivisible under one set of jury instructions (because, as Richardson argues, the instructions include the phrase "any building or dwelling" instead of the full list of locations) but divisible under a later version of jury instructions (because the instructions now include the full list of locations), even though the relevant language in the underlying burglary statute remained unchanged. Thus, Georgia's pattern jury instructions are also of little help.

### 4. Georgia Law Fails to Provide a Clear Answer

Richardson and the government, as well as the majority and dissent in *Gundy*, present colorable arguments and reasonable inferences. However, neither side has established its position with certainty. Unlike the Iowa burglary statute at issue in *Mathis*, which relied on a clear statement from the Iowa Supreme Court that the premises listed in the statute were "alternative method[s]" of satisfying the locational element, *Mathis*, 136 S. Ct. at 2256, we do not have the benefit of such a clear pronouncement from Georgia's highest court.

Although the parties' arguments do not definitively answer the threshold elements/means inquiry, they do establish that Georgia's burglary statute and the law interpreting it are ambiguous as to whether the different types of listed locations are elements or means of committing the offense. This is not surprising; "the divergence of outcomes after *Mathis* suggests that the 'elements or means' inquiry is not quite as easy as the Supreme Court thought, not the least because state legislatures and state courts do not draft their laws and craft their

---

**[6]***Compare* Ga. Code Ann. § 16-7-1 (1980) *with* Ga. Code Ann. § 16-7-1 (2012).

**[7]***Compare* Ga. Crim. Jury Instr. § 2.62.10 *with* Ga. Crim. Jury Instr. § 2.62.11.

decisions with this particular distinction in mind." *United States v. Steiner*, 847 F.3d 103, 120 (3d Cir. 2017).**[8]**

Here, even the most persuasive arguments offered by each side do not "definitively" answer the threshold question. *Mathis*, 136, S.Ct. at 2256. We disagree with the *Gundy* majority that the burglary statute's text and structure support the conclusion that the locations listed in the statute are elements rather than means. But we also disagree with the *Gundy* dissent that Georgia "case law *unambiguously* defines the elements of the crime of burglary, and the different types of locations that can be burglarized are not separate elements." 842 F.3d at 1171 (emphasis added).

Thus, because Georgia law fails to provide a clear answer, a *Mathis* "peek" at the records of Richardson's three Georgia burglaries is necessary.

**5. *Mathis* "Peek"**

As the *Mathis* Court explained, "if state law fails to provide clear answers, federal judges have another place to look: the record of a prior conviction itself." 136, S.Ct. at 2256. The Court cautioned that this "peek" at the record documents "is for the sole and limited purpose of determining whether the listed items are elements of the offense." *Id.* at 2256–57 (quotation marks and alterations omitted). The Court also gave contrasting examples of how to employ the "peek" to answer the elements/means inquiry.

> Suppose, for example, that one count of an indictment and correlative jury instructions charge a defendant with burgling a "building, structure, or vehicle"— thus reiterating all the terms of Iowa's law. That is as clear an indication as any that each alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt. So too if those documents use a single umbrella term like "premises": Once again, the record would then reveal what the prosecutor has to (and does not have to) demonstrate

---

**[8]**In his dissent in *Mathis*, Justice Breyer criticized the elements/means inquiry, predicting it would "produce a time-consuming legal tangle" and prove to be "not practical" in part because "there are very few States where one can find authoritative judicial opinions that decide the means/element question." *Mathis*, 136 S. Ct. at 2263–64 (Breyer, J., dissenting). Justice Alito, also dissenting in *Mathis*, was similarly concerned that "[t]he Court's approach calls for sentencing judges to delve into pointless abstract questions" and that lower courts would struggle to apply the means-element distinction. *Id.* at 2268 (Alito, J., dissenting); *see also id.* at 2264 ("Because of the ever-morphing analysis and the increasingly blurred articulation of applicable standards, [lower courts] are being asked to decide, without clear and workable standards, whether disjunctive phrases in a criminal law define alternative elements of a crime or alternative means of committing it.") (Breyer, J., dissenting) (quoting *Omargharib v. Holder*, 775 F.3d 192, 200 (4th Cir. 2014) (Niemeyer, J., concurring)).

> to prevail. *See Descamps*, 570 U.S., at ——, 133 S.Ct., at 2290. Conversely, an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime. Of course, such record materials will not in every case speak plainly, and if they do not, a sentencing judge will not be able to satisfy "*Taylor*'s demand for certainty" when determining whether a defendant was convicted of a generic offense. *Shepard*, 544 U.S., at 21, 125 S.Ct. 1254. But between those documents and state law, that kind of indeterminacy should prove more the exception than the rule.

*Mathis*, 136 S. Ct. at 2257. Here, the language in Richardson's indictments[9]—the only available record documents—"satisf[ies] *Taylor*'s demand for certainty when determining whether a defendant was convicted of a generic offense." *Id.* at 2257 (internal quotation marks omitted). Richardson's burglary indictments charge him with burglarizing "the dwelling house of another," (R. 35-1, PID 135), "a building, to wit: [a café,]" (*id.* at 139), and "the dwelling house of another," (*id.* at 141). Each indictment references only one of the several alternative locations listed in Georgia's burglary statute. This supports the government's argument (and *Gundy*'s holding) that the alternative locations are elements and the statute is divisible as to the locations that can be burglarized.[10]

Having concluded that Georgia's burglary statute is divisible, we must determine whether Richardson's three prior Georgia burglaries are generic under the ACCA. In doing so, we employ the modified categorical approach. Here, Richardson's state court indictments make clear that his burglary convictions involved three elements: (1) an unlawful entry (2) into a dwelling house or building (3) with intent to commit a crime therein. These elements substantially conform to the generic definition of burglary announced by the Supreme Court.

---

[9]The first 1999 indictment charged that Richardson "did without authority and with the intent to commit a felony or theft therein enter the dwelling house of another . . . ." (R. 35-1, PID 135.) The second 1999 indictment charged that Richardson "did without authority and with the intent to commit a felony, to wit: theft, therein entered a building, to wit: [a café.]" (*Id.* at 139.) The 2003 indictment charged that Richardson "did, without authority and with the intent to commit a theft therein, enter and remain within the dwelling house of another . . . ." (*Id.* at 141.)

[10]Richardson's only argument here is that "[a] *Mathis* 'peek' invites unlawful judicial factfinding" and "invites the very collapse of the distinction between the categorical and modified categorical approach cautioned against in *Descamps*." (Reply Br. at 12.) Having engaged in the analysis here, we understand the practical reality of Richardson's argument. Still, that argument demonstrates disagreement with *Mathis* and the Supreme Court's direction to peek at the records of a defendant's prior convictions in search of clarity. But *Mathis* is the law.

*See Taylor*, 495 U.S. at 599, 602 (stating that generic burglary is an "unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime").

Therefore, Richardson's prior Georgia burglary convictions at issue qualify as violent felonies under the ACCA's enumerated-crimes clause, and the district court did not err in sentencing Richardson as an armed career criminal.

## V. CONCLUSION

We **AFFIRM** the judgment of the district court.