**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 18-6041

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RANDALL CORNETTE,

Defendant - Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Asheville. Martin K. Reidinger, District Judge. (1:08-cr-00056-MR-1; 1:16-cv-00153-MR)

Argued: March 19, 2019                                    Decided: July 30, 2019

Before AGEE and FLOYD, Circuit Judges, and DUNCAN, Senior Circuit Judge.

Reversed and remanded by published opinion. Judge Floyd wrote the opinion in which Judge Agee and Senior Judge Duncan joined.

**ARGUED:** Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee. **ON BRIEF:** Caryn Devins, Research & Writing Specialist, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant. R. Andrew Murray, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

FLOYD, Circuit Judge:

Appellant Randall Cornette was sentenced as an armed career criminal because of certain predicate state convictions that the district court considered to be "violent felonies" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Cornette now contends that in light of the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015), he no longer has the requisite number of predicate offenses for the ACCA's sentencing enhancement. In the unique context of the facts presented, we agree.

I.

Cornette pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) pursuant to a written plea agreement with an appeal waiver. Under 18 U.S.C. § 924(a)(2), this conviction carries a maximum prison sentence of ten years. However, the presentence report (PSR) designated the following predicate "violent felony" convictions under the ACCA: (1) a 1976 Georgia felony burglary; (2) a 1979 North Carolina breaking-and-entering; (3) a 1986 North Carolina felony possession with intent to manufacture/sell/deliver schedule II controlled substance and felony sell/deliver schedule II controlled substance; and (4) a 1989 North Carolina felony breaking and entering. Based on these convictions, the district court determined that Cornette was an armed career criminal under the ACCA and sentenced him to 220 months of imprisonment.

2

Cornette did not challenge the ACCA enhancement at his initial sentencing, although he appealed the district court's judgment. We vacated the sentence because the district court procedurally erred in failing to adequately explain Cornette's sentence. *United States v. Cornette*, 396 F. App'x 8, 8 (4th Cir. 2010). On remand, Cornette challenged his ACCA enhancement but withdrew the challenge prior to resentencing. On resentencing, the district court once again sentenced Cornette to 220 months imprisonment. A review of that resentencing reveals that the district court did not specify whether it relied on the ACCA's enumerated clause, which includes "burglary" as a qualifying violent felony, or the residual clause in finding that Cornette qualified for the ACCA enhancement.

In 2012, Cornette filed his first motion under 28 U.S.C. § 2255 alleging ineffective assistance of counsel. The district court denied Cornette's motion and denied a certificate of appealability. After the Supreme Court's decision in *Johnson* ruling the residual clause of the ACCA void for vagueness, Cornette filed a second § 2255 motion arguing that he was no longer an armed career criminal. The district court dismissed this as an unauthorized second and successive § 2255. We granted a motion authorizing Cornette to file a second and successive § 2255. Cornette then filed a § 2255 motion, once again arguing that he no longer qualified as an armed career criminal under *Johnson* because (1) his 1976 Georgia burglary conviction no longer qualified as a predicate offense for ACCA purposes under the remaining force or enumerated clauses of ACCA and (2) his North Carolina controlled substance convictions did not qualify as ACCA predicates in

3

light of our decisions in *United States v. Newbold*, 791 F.3d 455 (4th Cir. 2015), and *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011) (en banc).

The district court denied Cornette's motion, this time on the merits, finding that Cornette's sentence was proper because his Georgia burglary convictions met the elements of generic burglary under § 924(e)(2)(B)(ii). This appeal followed.

II.

Whether an offense constitutes a "violent felony" under the ACCA is a question of law that we review de novo. *See United States v. White*, 571 F.3d 365, 367 (4th Cir. 2009).

III.

We begin with an overview of the post-*Johnson* ACCA landscape. Second, we address why the appeal waiver in Cornette's plea agreement does not bar us from reaching the merits of his ACCA claims. Third, we determine that Cornette's 1976 Georgia burglary conviction does not qualify as a violent crime under the ACCA. Finally, we hold that Cornette's North Carolina controlled substance convictions do not qualify as serious drug offenses under the ACCA. Accordingly, we grant Cornette's § 2255 motion and remand for resentencing.

A.

Under the ACCA, a person who is convicted of being a felon in possession of a firearm and who "has three previous convictions . . . for a violent felony or a serious drug

4

offense . . . committed on occasions different from one another . . . shall be . . . imprisoned not less than fifteen years[.]" 18 U.S.C. § 924(e)(1). The statute defines "violent felony" as:

> any crime punishable by imprisonment for a term exceeding one year . . . that . . . (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B). The first part of subsection (ii) is referred to as the "enumerated offenses" clause, while the phrase "otherwise involves conduct that presents a serious potential risk of physical injury to another" is known as the "residual clause." *Johnson*, 135 S. Ct. at 2555–57. In *Johnson*, the Supreme Court held that the residual clause was unconstitutionally void for vagueness but that its "decision [did] not call into question application of the [ACCA] to the four enumerated offenses, or the remainder of the Act's definition of a violent felony." *Id.* at 2563.

In *Welch v. United States*, the Supreme Court held that *Johnson* was a substantive rule that applied retroactively on collateral review, as it "narrow[ed] the scope of [the ACCA] by interpreting its terms," and was also a "constitutional determination[] that place[d] particular conduct or persons covered by the statute beyond the State's power to punish." 136 S.Ct. 1257, 1265 (2016) (internal citation and quotation marks omitted). *Welch* made clear that the residual clause of the ACCA "can no longer mandate or authorize any sentence," and that the substantive rule announced in *Johnson* "change[d] the scope of the underlying criminal proscription" because there was a "significant risk

5

that a defendant stands convicted of an act that the law does not make criminal." *Id.* at 1265–66 (internal citation and quotation marks omitted).

The statutory landscape as it stands today is that a defendant's prior conviction can still qualify as a "violent felony" only under the force clause or the enumerated clause of the ACCA. The record of Cornette's sentencing is unclear as to which clause of the ACCA—or even what predicate convictions—the district court relied upon in sentencing him. That is, in announcing its original sentence, the sentencing court stated only that it overruled all of Cornette's objections to the PSR and determined that the final offense level of 32 was "correct as stated in the Presentence Investigation Report and adopted by the Court." J.A. 28. Upon remand and resentencing, the sentencing court stated only that the total offense level of 32 and the criminal history category of VI made the applicable guideline range 210 to 262 months. J.A. 54. There was no discussion of any of the ACCA's clauses in either sentencing.

The government contends that the record does not establish that Cornette was sentenced under the residual clause such that Cornette cannot present any *Johnson II*-based challenge to his sentence. But under *United States v. Winston*, 850 F.3d 677 (4th Cir. 2017), we are to read this equivocation in the record in Cornette's favor. We recently reaffirmed this reasoning, stating that "a *Johnson II*-based § 2255 motion relies on a new rule of constitutional law . . . when the petitioner's ACCA-enhanced sentence 'may have been predicated on application of the now-void residual clause.'" *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018) (citing *Winston*, 850 F.3d at 682). In other words, we "will not penalize a movant for a court's discretionary choice not to

6

specify under which clause of Section 924(e)(2)(B) an offense qualified as a violent felony." *Winston*, 850 F.3d at 682. Since it is not clear one way or the other, we assume for purposes of this appeal that Cornette was sentenced under the ACCA's residual clause.

B.

We now turn to whether Cornette's appeal waiver bars us from considering the merits of his ACCA petition for relief. We hold that it does not under the circumstances of this case.

Cornette's plea agreement waived his right to appeal from errors in the sentence imposed against him, except for claims of ineffective assistance of counsel and prosecutorial misconduct. Cornette concedes that the claim he presses here is neither an ineffective assistance of counsel nor a prosecutorial misconduct claim. But Cornette contends that his otherwise valid appeal waiver does not bar him from now arguing that by imposing a sentence under the now unconstitutional residual clause of the ACCA, the district court exceeded its statutory authority to sentence him. Cornette's argument finds support in the precedent of this Court.

In *United States v. Marin*, we held that "a defendant who waives his right to an appeal does not subject himself to being sentenced entirely at the whim of the district court." 961 F.2d 493, 496 (4th Cir. 1993). An appeal waiver does not preclude a defendant from challenging a sentence "based on a constitutionally impermissible factor" or "a sentence imposed in excess of the maximum penalty provided by statute." *Id.*; *see*

7

*also Garza v. Idaho*, 139 S.Ct. 738, 745 n.6 (2019) (recognizing that lower courts have applied exceptions to appeal waivers for claims "that a sentence . . . exceeds the statutory maximum authorized"); *United States v. Cohen*, 888 F.3d 667, 683 (4th Cir. 2018) (reiterating that "an appeal waiver does not preclude . . . challenges that a sentence exceeds a statutory maximum or is based upon a constitutionally infirm factor"); *United States v. General*, 278 F.3d 389, 399 (4th Cir. 2002) (acknowledging that "arguments contending that sentence was imposed upon constitutionally impermissible factors or that sentence exceeds the statutory maximum are not barred by contractual waivers.").

We subsequently applied *Marin* to the question of whether an appeal waiver barred a defendant from challenging a district court's restitution order that exceeded the statutorily authorized punishment for a defendant's underlying conviction. *United States v. Broughton-Jones*, 71 F.3d 1143, 1147 (4th Cir. 1995). It does not. *Id.* ("Because a restitution order imposed when it is not authorized by [statute] is no less 'illegal' than a sentence of imprisonment that exceeds the statutory maximum, appeals challenging the legality of restitution orders are similarly outside the scope of a defendant's otherwise valid appeal waiver."). Cornette's challenge to his sentence is likewise predicated on the assertion that the district court did not have the statutory authority to impose the sentence it did (here, under the residual clause, rather than the restitution statute), and so *Marin* and *Broughton-Jones* support his contention.

Cornette's argument can be simplified to the following: (1) *Johnson* struck the residual clause of the ACCA as unconstitutional; (2) *Welch* made *Johnson* retroactive; (3) he was sentenced pursuant to ACCA's residual clause; and (4) because *Welch* made

8

*Johnson* retroactive and he was sentenced pursuant to the ACCA's residual clause, the district court had the statutory authority at the first sentencing to impose a sentence containing a sentence enhancement under the residual clause of the ACCA but is now deemed not to have had that authority. There is no dispute about the first two propositions. And as we discussed previously, we do not agree with the government's argument about the third proposition that the original sentencing judge did not rely upon the residual clause in sentencing Cornette, and that Cornette could not claim relief based on *Johnson*. The only remaining issue, therefore, is whether the district court is now deemed to have had the statutory authority to impose the sentence. It did not. The district court sentenced Cornette pursuant to the residual clause. *Welch* made *Johnson* retroactive, and so all sentences rendered under the residual clause became unconstitutional. Therefore, Cornette's sentence was imposed "in excess of the maximum penalty provided by [ACCA]," *Marin*, 961 F.2d at 496, and the appeal waiver does not bar Cornette's *Johnson* claim.

To be clear, this does not mean that a subsequent change in sentencing law renders an otherwise valid appeal waiver invalid. Our own precedent establishes that when a sentencing law undergoes a non-retroactive change, a defendant who waived his right to appeal a sentence imposed under the old regime remains bound by that waiver even if resentencing under the new regime might otherwise entitle him to new rights or subject him to different penalties. In *United States v. Blick*, 408 F.3d 162, 170 (4th Cir. 2005), we rejected a defendant's claim that he should be resentenced in light of the advisory Guidelines regime announced in *United States v. Booker*, 543 U.S. 220 (2005), reasoning

9

that "[p]lea bargains rest on contractual principles" and so a party "cannot . . . ask to re-bargain the waiver of his right to appeal because of changes in the law." Furthermore, the defendant's sentence was within the statutory maximum. We examined this issue again in *United States v. Archie*, 771 F.3d 217 (4th Cir. 2014) (Agee, J.), where the appellant levied a challenge based on the new right created by the Supreme Court in *Alleyne v. United States*, 570 U.S. 99 (2013) that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." Yet, the Supreme Court did not make *Alleyne* retroactive. Thus, in *Archie*, we held that a "post-sentencing change in the law does not void" an appeal waiver, reasoning that if we declined to enforce an appeal waiver because of a subsequent change in the law "we would deprive the Government of the benefit of its bargain and frustrate the purpose underlying such contracts." *Id.* at 222.

Both *Alleyne* and *Booker* created a new prospective procedural right within the context of sentencing. But they did not do what *Johnson* does, which is to strike the statutory provision under which a defendant was sentenced as unconstitutional, thus removing the district court's statutory authorization to sentence altogether. Yet *Johnson* alone would give Cornette no relief. Only with the addition of *Welch* does Cornette have a viable claim.

Unlike the substantive rule that the Supreme Court announced in *Johnson* and made retroactive in *Welch*, the Supreme Court never made the procedural rules in *Alleyne* and *Booker* retroactive. Accordingly, in *Blick* and *Archie* we were considering sentences that were still permissible at the time they were imposed. *Welch* makes clear that

10

sentences imposed under the residual clause of the ACCA are impermissible because every person in the "class of persons" sentenced under the residual clause is one "convicted of conduct the law does not make criminal." 136 S. Ct. at 1265 (internal citation and quotation marks omitted). A defendant such as Cornette who "does not constitute an armed career criminal . . . [has] received a punishment that the law cannot impose upon him." *United States v. Shipp*, 589 F.3d 1084, 1091 (10th Cir. 2009) (internal quotation marks omitted) (citing *Schriro v. Summerlin*, 542 U.S. 348, 352 (2004)).

In sum, because the residual clause was struck from the ACCA in *Johnson* and the Supreme Court determined in *Welch* that *Johnson* announced a substantive rule that applied retroactively, the district court is now deemed to have had no statutory authority to impose Cornette's sentence under the residual clause of the ACCA. Accordingly, we may review Cornette's sentencing challenge notwithstanding the appeal waiver.


C.

We turn now to the merits of Cornette's ACCA arguments. Cornette contends that his 1976 conviction for Georgia felony burglary is not categorically a violent felony because both the unlawful entry and location elements of Georgia burglary are overbroad when compared to the corresponding elements of generic burglary under the enumerated

11

clause of the ACCA.[1]  We first determine that the Georgia burglary statute under which Cornette was convicted is indivisible, requiring application of the categorical approach. We next apply the categorical approach to determine whether Cornette's conviction qualifies as an ACCA predicate.  We conclude that it does not.

1.

We must first determine whether Georgia's burglary statute at the time of Cornette's 1976 conviction is divisible or indivisible.  If Georgia's definition of burglary is divisible, we use the modified categorial approach to determine whether it qualifies as an ACCA predicate.  *United States v. Hemingway*, 734 F.3d 323, 331 (4th Cir. 2013). The modified categorical approach permits us to consult certain court records—such as charging documents, plea agreements, transcripts of plea colloquies, judicial findings of fact and conclusions of law, jury instructions, and verdict forms—to determine whether the conduct underlying the defendant's conviction fits the mold of an ACCA predicate. *Shepard v. United States*, 544 U.S. 13, 26 (2005).  But if Georgia's definition of burglary is not divisible, we use the categorical approach and restrict our analysis to the fact of the conviction itself, taking no account of the actual conduct on which the conviction is based*.  Hemingway*, 734 F.3d at 332.  We conclude that Georgia's definition of burglary is not divisible, making the categorical approach appropriate.

---

[1] There is no real question that Georgia felony burglary does not qualify as a violent felony under the force clause of the ACCA—a person may commit burglary by entering "without authority."  The Government makes no argument to the contrary.

We determine whether a statute is divisible based on whether the statute contains "multiple alternative *elements* (thus creating multiple versions of a crime)" such that it is divisible or "multiple alternative *means* (of committing the same crime)" such that it is indivisible. *Omargharib v. Holder*, 775 F.3d 192, 198 (4th Cir. 2014) (emphasis in original). Under *Mathis v. United States*, the text of the statute and controlling state law are starting points for answering this question. 136 S. Ct. 2243 (2016).

The first question before us, then, is whether the text of the statute of Cornette's conviction suggests that the offense is divisible. The 1968 Georgia burglary statute under which Cornette was convicted reaches any person who "without authority and with the intent to commit a felony . . . enters or remains within . . . any building, vehicle, railroad car, watercraft, or other such structure designed for use as the dwelling of another, or enters or remains within any other building or any room or any part thereof." Ga. Code § 26-1601 (1968). We must therefore determine whether the statute creates (a) separate crimes of burglary that differ based on the type of location entered—e.g., burglary of a building, burglary of a watercraft, burglary of a structure designed for use as a dwelling, and so on—or (b) a single crime of burglary that requires, as one element, entry into any of several different types of location.

As a threshold matter, the statute does set forth a disjunctive list of types of locations that may be burgled. *See United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015). While the statute's disjunctive language sets up a divisibility question, it does not answer it. *Id.* ("[M]ere use of the disjunctive 'or' in the definition of a crime does not automatically render it divisible."); *United States v. Royal*, 731 F.2d 333, 340 (4th Cir.

2013) (holding that similarly disjunctive jury instructions were compatible with an indivisible offense). Instead, we consider whether the statute's language describes "statutory alternatives" indicating different crimes or mere "illustrative examples" referring only to a crime's means of commission. *Mathis*, 136 S. Ct. at 2256.

Here, the language of the Georgia burglary statute suggests a single crime of burglary while spelling out various factual ways to fulfill the location element of the offense. That is, the "illustrative examples" in the statute of burgling a watercraft or railroad car refer only to the means of commission. *Id.* Additionally, the statute does not contain different penalties based on the type of location burgled and does not require prosecutors to charge the type of location burgled. Therefore, the statute's language suggests that it consists of alternative means as opposed to alternative elements.

Controlling state court decisions confirm that the statute contains alternative means. How state courts treat jury instructions, in particular, can be instructive on whether a statute lists means or elements. In *Omargharib*, we explained that elements of a crime, as opposed to means, are factual circumstances of the offense that the jury must find "unanimously and beyond a reasonable doubt." 775 F.3d at 198 (internal citation and quotation marks omitted). As relevant here, Georgia courts have repeatedly upheld jury instructions where a jury was entitled to find entry into either a "dwelling house or building," with no unanimity requirement on those alternatives. In *Hart v. State*, the Georgia Supreme Court held that such a jury instruction was "sufficient to inform the jury of the essential elements of the offense." 517 S.E.2d 790, 793 (Ga. Ct. App. 1999). Significantly, the indictment in *Hart* charged entry into a "dwelling house," a term used

14

in the burglary statute, but the jury was not required to agree that the location burgled was indeed a "dwelling house." *Id.* at 792; *see also Long v. State*, 705 S.E.2d 889 (Ga. Ct. App. 2011) (upholding jury instruction with identical location element as "complete and correct"). The lack of a jury unanimity requirement on the type of location burgled indicates that burglary includes multiple alternative means as opposed to elements, and so is an indivisible offense.

While Georgia law does require prosecutors to charge "the specific location" burgled, *see Morris v. State*, 303 S.E.2d 492, 494 (Ga. Ct. App. 1983) (stating that an indictment "must specify the location of the burglary" in order "to give the defendant ample opportunity to prepare a defense"), there is no analogous requirement that prosecutors charge or prove the *type* of location burgled. In *State v. Green*, 218 S.E.2d 456, 457 (Ga. 1975), the Georgia Supreme Court dismissed an indictment charging a defendant with entering "a building" because its failure to specify "the location of the building in question" deprived the defendant of required notice. If the "specific location" requirement pertained to the elements of the offense, the indictment in *Green* would have been adequate. Conversely, the Georgia Court of Appeals in *Mobley v. State*, 296 S.E.2d 154, 154 (Ga. Ct. App. 1982), upheld an indictment that charged a defendant with burgling the "Social Circle Drug Store," even though it made no reference to a specific location type stated in the burglary statute. Therefore, we conclude that this rule pertains to the address of the location burgled as opposed to the type of location burgled.

Resisting this conclusion, the government points to *DeFrancis v. Manning*, 271 S.E.2d 209 (Ga. 1980), in which the Georgia Supreme Court held an indictment to be

15

legally defective because it charged burglary of a car without alleging that the car was designed for use as a dwelling. The government's reliance on *DeFrancis* is misplaced. All *DeFrancis* tells us is that burglary requires a dwelling. It does not tell us that the particular type of dwelling must be specified in the indictment. And it certainly does not require the jury to agree on the type of dwelling alleged to have been burgled. *See Richardson v. United States*, 890 F.3d 616, 624 (6th Cir. 2018) (finding that *DeFrancis* does not bear on the divisibility inquiry).

To summarize, both the text of the Georgia burglary statute in effect at the time of Cornette's conviction and controlling state law indicate that burglary is a single, indivisible crime: the statutory text contains only alternative means of committing burglary and state court precedent indicates that there is no requirement that a jury must unanimously agree on the type of location that is burgled. Accordingly, the statute is indivisible, and we apply the categorical approach.[2]

_____

[2] We recognize that our conclusion puts us at odds with the Eleventh Circuit's decision in *United States v. Gundy*, 842 F.3d 1156 (11th Cir. 2016), and the Sixth Circuit's decision in *Richardson v. United States*, 890 F.3d 616 (6th Cir. 2018). Respectfully, we do not find the reasoning of our sister circuits persuasive.

The Eleventh Circuit relied on the text of the Georgia statute, the fact that "under Georgia law a prosecutor must select, identify, and charge the specific place or location that was burgled," and the defendant's indictment to find the statute divisible. *Gundy*, 842 F.3d at 1167. However, the inclusion of a "disjunctive list" in a criminal statute is not probative of divisibility and Georgia's requirement that prosecutors charge a "specific location" means just that the prosecutor must include the address of the location burgled to pass statutory muster and does not indicate that the statute itself sets forth alternative crimes based on the type of location.

The Sixth Circuit found the statute divisible because the defendant's indictments stated the location types enumerated in the Georgia statute. *Richardson*, 890 F.3d at 629. But even if Georgia caselaw is ambiguous enough to allow a reviewing court to consider
(Continued)

16

2.

Utilizing the categorical approach, we move to whether, at the time of Cornette's conviction in 1976, the definition of burglary in the Georgia burglary statute criminalized more conduct than ACCA generic burglary. *See McNeill v. United States*, 563 U.S. 816, 820 (2011) (court applying ACCA must conduct "backward-looking" inquiry into prior convictions, meaning that court must "consult the law that applied at the time of th[ose] conviction[s]"); *see also Rivera v. United States*, 716 F.3d 685, 688 (2d Cir. 2013) ("Whether a prior conviction qualifies as a predicate felony for the ACCA sentencing enhancement is determined by looking to state law existing at the time of that conviction."). We hold that it did.

Let us start with the generic definition of burglary. In *United States v. Stitt*, the Supreme Court held that generic burglary under the enumerated clause of the ACCA is "an unlawful or unprivileged entry into, or remaining in, a building or other structure, with intent to commit a crime." 139 S. Ct. 399, 405–06 (2018) (citing *Taylor v. United States*, 495 U.S. 575, 598 (1990)). This definition includes entry into vehicles "adapted or customarily used for lodging." *Id.* at 406.

---

an individual defendant's indictment as authorized under *Mathis*, that "peek" is for the "sole and limited purpose of determining whether [alternatives] are elements of the offense." 136 S. Ct. at 2257. As the Georgia Supreme Court reasoned in *Hart*, even an indictment that includes a specific type of statutory location cannot establish that the location type is an element of the charged offense because a jury could properly have been instructed with finding entry into *either* a "dwelling house or building." 517 S.E.2d at 793. Accordingly, the *Richardson* court's reliance on the specific indictments of the defendant to conclude that the type of location is an element of burglary was misplaced.

17

At the time of Cornette's conviction, Georgia's definition of burglary was broader than the generic definition. The statute defining burglary reads as follows:

> A person commits burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another, or any building, vehicle, railroad car, aircraft, watercraft, or other such structure designed for use as the dwelling of another, or enters or remains within any other building or any room or any part thereof. A person convicted of burglary shall be punished by imprisonment for not less than one nor more than 20 years.

Ga. Code § 26-1601 (1968). Facially, this definition of burglary appears to conform to *Stitt*'s generic definition: it criminalizes entry into vehicles only if they are "designed for use as the dwelling of another." *Id.* But our reading of the statute's language does not control. Instead, we must defer to the interpretation of the statute employed by Georgia courts at the time of Cornette's conviction, in 1976. And at the time of Cornette's conviction, Georgia's intermediate appellate court had held that the state's definition of burglary included entry into "any . . . vehicle," regardless of whether it was designed for use as a dwelling. *Hayes*, 186 S.E.2d at 436. Thus, when Cornette was convicted, Georgia's definition of burglary criminalized a broader range of conduct than the generic definition of burglary we use for ACCA purposes.

The government argues that *Hayes* has no bearing on our analysis because it was issued by an intermediate appellate court, rather than by Georgia's highest court. According to the government, instead of looking to *Hayes*, we should turn our attention to *Massey v. State*, 234 S.E.2d 144 (Ga. 1977). In *Massey*, the Supreme Court of Georgia rejected *Hayes*, holding that "the clear intent of [the Georgia burglary] statute is that for a person to be guilty of burglary of a vehicle such vehicle must be designed for use as a

18

dwelling." But *Massey* was not decided until 1977, whereas Cornette was convicted in 1976. At the time of Cornette's conviction, *Hayes* had been decided and *Massey* had not. That being so, we consider *Hayes* to be the binding interpretation of Georgia law at the time of Cornette's conviction. Indeed, when confronting matters of state law that have not yet been decided by the state's high court, we typically turn to the state's intermediate appellate courts. *See Assicurazioni Generali, S.p.A. v. Neil*, 160 F.3d 997, 1002 (4th Cir. 1998) (citing *West v. AT & T Co.*, 311 U.S. 223, 237 (1940)). Nothing more is called for here. In 1976, the crime of burglary in Georgia reached more conduct than the generic crime of burglary enumerated in the ACCA; therefore, Cornette's burglary conviction is not a "violent felony" for purposes of the ACCA sentencing enhancement.[3]

Additionally, the government calls our attention to *DeFrancis*, 271 S.E.2d 209, in which the Supreme Court of Georgia granted habeas relief to a petitioner who had been convicted of burglary in 1974 but whose indictment was deficient under the post-*Massey* interpretation of the burglary statute. *DeFrancis* does not affect our analysis. The inquiry into whether state law at the time of conviction "covers more conduct" than the generic offense does not anticipate a separate inquiry into whether some convicted defendants later accrued a claim to habeas relief, as happened with the habeas petitioner in *DeFrancis*. *Mathis*, 136 S. Ct. at 2250. This approach comports with other circuits that have considered the question. *See, e.g., United States v. Faust*, 853 F.3d 39, 58 (1st Cir. 2017) (declining to consider subsequent judicial interpretations of an unchanged

---

[3] Based on our holding, we need not consider Cornette's additional argument that the unlawful entry element of Georgia burglary is broader than generic burglary.

19

statute for purposes of applying the categorical approach under the ACCA); *United States v. Roblero-Ramirez*, 716 F.3d 1122 (8th Cir. 2013) (looking to highest state court caselaw at the time of defendant's state court conviction to determine that Nebraska sudden quarrel manslaughter was not a "crime of violence" under the Sentencing Guidelines, even where Nebraska Supreme Court later held that manslaughter required intent, as "[t]hat interpretation was not Nebraska law when Roblero-Ramirez was convicted.").

Therefore, *Massey* and *DeFrancis* do not disturb our conclusion that at the time of Cornette's conviction, the highest Georgia state court to interpret the location element of the Georgia burglary statute held that it covered entry into "any . . . vehicle." *Hayes*, 186 S.E.2d at 436. Thus, the Georgia burglary statute, as construed by the applicable Georgia court at the time of Cornette's conviction, is overbroad compared to the generic burglary crime in the enumerated clause of the ACCA, and Cornette's 1976 burglary conviction is therefore not a "violent felony" for purposes of the ACCA sentencing enhancement.

D.

Having determined that Cornette's burglary conviction no longer qualifies as a violent felony, we move to whether Cornette's 1984 North Carolina controlled substance convictions qualify as ACCA predicates. Cornette contends that in light of our decisions in *United States v. Newbold*, 791 F.3d 455 (4th Cir. 2015), and *United States v. Simmons*,

649 F.3d 237 (4th Cir. 2011) (en banc), these convictions no longer qualify as ACCA predicates. We agree.[4]

In *Newbold*, we applied *Simmons* to determine whether a 1984 North Carolina conviction imposed under the Fair Sentencing Act qualified as a serious drug offense for purposes of § 924(e)(2)(A). 791 F.3d at 463. We looked to the presumptive sentence that the offense carried and whether the defendant's state court judgment had "aggravating factors supporting a sentence within the aggravated range," that is, a sentence above the presumptive sentence. *Id.* There, the judgment did not state any aggravating factors found by the sentencing judge, and there was no evidence found in the plea transcript to support an admission of aggravating factors, and so we held that Newbold's conviction did not qualify as a serious drug offense because he could not have received ten years of imprisonment for the offense without a finding of aggravating factors. *Id.* at 461–63.

At the time of Cornette's 1984 conviction, North Carolina also sentenced criminal defendants under the Fair Sentencing Act. And like the record we examined in *Newbold*, the record before us has no finding and recording of aggravating or mitigating factors. Cornette's state court judgment only shows that the presumptive range for his controlled substance conviction was three years' imprisonment and that the maximum term was 10

---

[4] The district court found that Cornette had not timely challenged his ACCA designation under *Simmons*. In doing so, it misapprehended the nature of Cornette's challenge—at the time of *Simmons*, Cornette had three remaining ACCA predicate offenses, and so could not claim relief under *Simmons* to argue that his sentence "was in excess of the maximum authorized by law" under § 2255(a).

years. J.A. 95. Under the Fair Sentencing Act, Cornette could not have received 10 years of imprisonment for his North Carolina controlled substance conviction without a finding of aggravating factors on the record. There is no such finding, and so Cornette's 1984 controlled substance conviction is not a "serious drug offense" as is necessary to qualify as an ACCA predicate.

## IV.

To recap, we hold that: (1) Cornette may appeal his sentence notwithstanding the appeal waiver in his plea agreement; (2) his 1976 Georgia burglary conviction is not a "violent felony" under the ACCA; and (3) his 1984 North Carolina controlled substances conviction is not a "serious drug crime" under the ACCA. Therefore, Cornette does not have the requisite number of predicate offenses to be designated an armed career criminal under the ACCA. We therefore grant Cornette's § 2255 petition and reverse and remand for resentencing, with instructions for the district court to resentence Cornette without the ACCA enhancement.

*REVERSED AND REMANDED WITH INSTRUCTIONS*